## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 13-33965 |
| BARSANTI WOODWORK | ) | Chapter 7 |
| CORPORATION, | ) | Hon. Pamela S. Hollis |
| | ) | |
| Debtor. | ) | |
| | ) | |
| EUGENE CRANE, not individually, but solely | ) | |
| in his capacity as Chapter 7 Trustee for the Estate | ) | |
| of BARSANTI WOODWORK CORPORATION, | ) | |
| Debtor, | ) | Adv. No. |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL KELLY, individually and as Trustee of | ) | |
| THE K FAMILY TRUST, ROBERT GEREG, | ) | |
| individually, and d/b/a CAPITAL RESOURCE | ) | |
| ASSOCIATES and FORCE 5 HOLDINGS, | ) | |
| INC., an administratively dissolved Florida | ) | |
| corporation, BWC CAPITAL, LLC, an | ) | |
| Indiana limited liability company, BARSANTI | ) | |
| MILLWORK, LLC, an Indiana limited liability | ) | |
| company, FREEBORN & PETERS, LLP, an | ) | |
| Illinois limited liability partnership, EDWARD | ) | |
| L. FILER, and THE K FAMILY TRUST, | ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT

Plaintiff, EUGENE CRANE, not individually, but solely in his capacity as the Chapter 7

Trustee for the Estate of BARSANTI WOODWORK CORPORATION, Debtor (the "Trustee"),

hereby complains as follows against Defendants: PAUL KELLY, individually and as Trustee of

THE K FAMILY TRUST, ROBERT GEREG, individually, and d/b/a CAPITAL RESOURCE

1

ASSOCIATES and FORCE 5 HOLDINGS, INC., an administratively dissolved Florida corporation, BWC CAPITAL, LLC, an Indiana limited liability company, BARSANTI MILLWORK, LLC, an Indiana limited liability company, FREEBORN & PETERS, LLP, an Illinois limited liability partnership, EDWARD L. FILER and THE K FAMILY TRUST:

## INTRODUCTION

1.    This adversary proceeding seeks damages for the Debtor's bankruptcy estate and the Debtor's creditors caused by the creation and implementation by the Defendants of a scheme designed to transfer the assets of the Debtor free and clear of the claims of the Debtor's creditors to a new entity for the benefit of the Debtor's principal, Paul Kelly and others. This scheme was accomplished by the purchase of a loan from BMO Harris Bank by a newly organized entity, BWC Capital, LLC, which was owned entirely by the Debtor's consultant. BWC Capital's purchase of the loan from BMO Harris Bank was funded entirely with the Debtor's cash, and BWC Capital, LLC did not contribute any consideration for the purchase of the loan. After the loan was purchased from BMO Harris Bank and assigned to BWC Capital, LLC, a new operating entity called Barsanti Millwork, LLC was formed to operate in substantially the same business as the Debtor. Thereafter, court proceedings were manipulated to allow BWC Capital, LLC to obtain a judgment against the Debtor to create a "safe harbor" for BWC Capital, LLC, Barsanti Millwork, LLC, Paul Kelly and others. The Debtor's attorneys at Freeborn & Peters, LLP were instrumental in the documentation and implementation of this scheme, and disregarded obvious conflicts of interest that adversely impacted the Debtor, its creditors and its estate.

## PATRIES, JURISDICTION AND VENUE

2.      This adversary proceeding arises in the Chapter 7 bankruptcy case currently pending in the United States Bankruptcy Court for the Northern District of Illinois commonly referred to as *In re Barsanti Woodwork Corporation*, Case No. 13-33965 (the "Bankruptcy Case"). Eugene Crane was appointed as Trustee in the Bankruptcy Case and continues to serve in such capacity through the present and has the duties and responsibilities set forth in the Bankruptcy Code.

3.      Under 28 U.S.C. § 1334(b), this Court has subject matter jurisdiction over this proceeding, which is referred here pursuant to 28 U.S.C. § 157(a) and Local Rule 40.3.1(a) of the United States District Court for the Northern District of Illinois.

4.      This action will augment the amount of property available for distribution or the allocation of property among creditors in the Bankruptcy Case.

5.      This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (H) and (O) and this Court has constitutional authority to enter final judgments and orders thereon.

6.      Defendant, Paul Kelly is an individual who resides at 111 S. Prospect Ave., Clarendon Hills, Illinois.

7.      Defendant, Robert Gereg is an individual who resides at 678 Clear Creek Dr., Osprey, Florida.

8.      Defendant, BWC Capital, LLC is a limited liability company organized under the laws of the State of Indiana, with its principal place of business located at 3838 W. 51st St., Chicago, Illinois. Robert Gereg asserts that he is currently the owner and sole member of BWC Capital, LLC.

3

9.     Defendant, Barsanti Millwork, LLC is a limited liability company organized under the laws of the State of Indiana, with its principal place of business located at 3838 W. 51st St., Chicago, Illinois. Robert Gereg asserts that he is currently the owner and sole member of Barsanti Millwork, LLC.

10.     Defendant, Freeborn & Peters, LLP is a limited liability partnership organized under the laws of the State of Illinois, with its principal place of business located at 311 S. Wacker Dr., Suite 3000, Chicago, Illinois.

11.     Defendant, Edward L. Filer is a partner at Freeborn & Peters, LLP and resides in Clarendon Hills, Illinois.

12.     Defendant, The K Family Trust, on information and belief, is a self-settled trust naming defendant, Paul Kelly, as both trustee and sole beneficiary with power of direction, and has an address of 111 S. Prospect Ave., Clarendon Hills, Illinois.

## FACTS COMMON TO ALL COUNTS

13.     Barsanti Woodwork Corporation (the "Debtor") filed its petition for relief under Chapter 7 of the Bankruptcy Code on August 26, 2013 (the "Petition Date"), at which time the Trustee was appointed in the Bankruptcy Case.

14.     Prior to the Petition Date, the Debtor was in the business of providing services relating to fabrication and installation of customized woodwork and millwork with its principal place of business located at 3838 West 51st Street, Chicago, Illinois.

15.     As of the Petition Date, Paul Kelly ("Kelly") was the president and sole shareholder of the Debtor.

16.     As of the Petition Date, counsel of record for the Debtor in this Chapter 7 proceeding were Freeborn & Peters LLP ("Freeborn"), and certain attorneys at Freeborn.

4

**The Debtor's Loan with BMO Harris Bank**

17.     On or around December 19, 2007, the Debtor and BMO Harris Bank, N.A. ("Harris") entered into a Business Loan Agreement, which was subsequently amended and modified on September 11, 2008 and June 30, 2010 (the "Loan").

18.     Under the Loan, Harris agreed to lend money to the Debtor through a line of credit in the principal amount of $1,600,000.00.

19.     By a later agreement between the Debtor and Harris, the aggregate principal amount of the Loan was increased to $1,755,625.00.

20.     The Loan was evidenced by two (2) promissory notes payable by the Debtor to Harris.

21.     The earlier of the two (2) promissory notes was made by the Debtor in the original principal amount of $1,600,000.00 and is dated September 30, 2008 (the "$1.6 million Note").

22.     The $1.6 million Note was purportedly modified from time to time by Change in Terms Agreements dated November 1, 2009, June 30, 2010 and April 5, 2013.

23.     The later of the two (2) promissory notes was made by the Debtor in the original principal amount of $155,625.00 and is dated September 11, 2008 (the "$155,625.00 Note").

24.     The $155,625.00 Note was purportedly modified from time to time by Change in Terms Agreements dated September 30, 2008 and April 5, 2013.

25.     The Debtor's indebtedness under the $1.6 million Note and the $155,625.00 Note was guaranteed by the Debtor's officer(s) and/or director(s) Eugene C. Barsanti ("Barsanti") and Kelly (the "Guaranties").

26.   The Loan was secured pursuant to a Commercial Security Agreement purporting to grant Harris first priority security interests in all property, assets, rights and interests of the Debtor.

27.   On January 2, 2008, Harris recorded a UCC Financing Statement with the Illinois Secretary of State, Document No.: 12832273, purporting to perfect Harris' security interests in all of the tangible and intangible assets of the Debtor.

**The Debtor's Problems with Harris and the Retention of Robert Gereg**

28.   On or around December 11, 2012, Harris sent demand letters to the Debtor's customers directing those customers to remit any payment due and owing to the Debtor directly to Harris by December 17, 2012, and stating that "[i]f payment is not received by Harris on or before December 17, 2012, Harris will have no choice but to consider its remedies to collect the amounts due and owing to [the Debtor]," (the "Demand Letters").

29.   On January 4, 2013, Harris filed two (2) separate lawsuits in the Circuit Court of Cook County related to the Loan.

30.   In the first lawsuit, commonly referred to as *BMO Harris Bank, N.A. v. Barsanti Woodwork Corporation*, Circuit Court of Cook County case no. 2013 L 000111 (the "Harris Replevin Action"), Harris alleged that the Debtor was in default under the terms of the Loan and sought the entry of an Order for Replevin granting possession of the Debtor's personal property to Harris.

31.   In the second lawsuit, commonly referred to as *BMO Harris Bank, N.A. v. Barsanti Woodwork Corporation, Paul M. Kelly and Eugene C. Barsanti*, Circuit Court of Cook County case no. 2013 L 000113 (the "Harris Breach of Contract Action" and collectively, with the Harris Replevin Action, the "Harris State Court Lawsuits"), Harris alleged that the Debtor,

6

Kelly and Barsanti were in default of their obligations under the $1.6 million Note, the $155,625.00 Note and the Guaranties, respectively, and sought the entry of an Order awarding damages to Harris.

32.    On or around February 13, 2013, the Debtor retained Freeborn to represent the Debtor in connection with the Harris State Court Lawsuits. A true and accurate copy of the engagement letter between the Debtor and Freeborn is attached hereto as **Exhibit A**.

33.    Filer, a partner at Freeborn, was the originating attorney for the engagement of Freeborn by the Debtor, is the attorney primarily responsible for legal services provided to the Debtor and is the attorney that signed the engagement letter on behalf of Freeborn.

34.    On or around March 7, 2013, the Debtor retained Capital Resource Associates/Force 5 Holdings, Inc. (collectively, "CRA") to provide financing and business development services in connection with the Debtor's business activities, including working capital, real estate and equipment financing. A true and accurate copy of this engagement letter dated February 28, 2013 and executed by Kelly, as President of the Debtor on March 7, 2013 is attached hereto as **Exhibit B**.

35.    Capital Resource Associates is a sole proprietorship that is wholly owned and operated by an individual named Robert Gereg ("Gereg").

36.    Force 5 Holdings, Inc. ("Force 5") is an administratively dissolved Florida corporation that is wholly owned and operated by Gereg.

37.    The general scope of services to be provided by CRA to the Debtor included the following:

  •    Investigate financing alternatives, and provide the Debtor with an analysis of the various programs and opportunities available;

7

- Assist with the preparation of a business plan for the Debtor's requirements that includes marketing, management, and financial data as required for any financing application, or presentation to selected financing sources;

- Secure Investor, Lender or Credit Guarantor interest, as required, to successfully conclude the transaction;

- Assist in the preparation of any Investor, Lender, Credit Guarantor or Governmental Loan Guarantee loan applications, where required;

- Assist in finalizing commitments from any outside source, and assist in the closing of the transaction(s).

**(Exhibit B**, p. 1).

38.    The Debtor and CRA agreed that CRA's fee for services rendered would be as follows:

> For financing provided and accepted by Client, CRA (or its designee) shall receive a fee allocated on a sliding scale as follows: (i) Five (5.0%) Percent of any financing provided and accepted by Client in an amount up to $500,000; plus Four (4.0%) Percent of any financing accepted by Client for amounts up to $1,000,000, plus (iii) One (1.0%) Percent of any financing accepted by Client for amounts over $1,000,000.00.    For the purpose of this agreement, financing is defined as the total payments in cash, securities, notes, loans, lines of credit, asset purchases, asset sales, sale/lease back, credit extensions, discounted debt obligations, and credit guarantees.

**(Exhibit B**, p. 2).

39.    Immediately after CRA was engaged by the Debtor, Gereg began negotiations with Harris regarding the resolution of the Harris State Court Lawsuits and the settlement of the Debtor's obligations to Harris under the Loan.

40.     On April 1, 2013, Kelly, in his capacity as President of the Debtor, executed a letter agreement with Harris whereby the Debtor agreed to deposit all collected accounts receivable with Harris and to provide Harris with an accounting of its collection of accounts receivable upon demand from Harris, in exchange for Harris's agreement to withdraw the Demand Letters issued to the Debtor's customers.

41.     On April 1, 2013, Harris delivered a letter to the Debtor rescinding its Demand Letters.

## The Organization of BWC Capital and the Assignment of the Loan

42.     On April 4, 2013, BWC Capital, LLC ("BWC Capital") was organized as a limited liability company under the laws of the State of Indiana.

43.     At the time of its creation, Gereg was named as the owner and sole member of BWC Capital.

44.     Freeborn prepared all of the necessary documentation for BWC Capital to be organized as an Indiana limited liability company at the direction of Gereg while Freeborn was representing the Debtor.

45.     Freeborn drafted BWC Capital's Operating Agreement while Freeborn was representing the Debtor.

46.     Freeborn prepared all of the necessary documentation for BWC Capital to apply for a federal tax identification number issued by the Internal Revenue Service while Freeborn was representing the Debtor.

47.     As of April 4, 2013, Gereg, BWC Capital and/or CRA had not engaged Freeborn as counsel.

48.     The Debtor was billed by Freeborn for legal services rendered by Freeborn for preparing the documentation necessary for BWC Capital to be organized under the laws of the State of Indiana.

49.     The Debtor was billed by Freeborn for legal services rendered by Freeborn for preparing the documentation necessary for BWC Capital to apply for the issuance of a federal tax identification number by the Internal Revenue Service.

50.     The Debtor was billed by Freeborn for costs advanced by Freeborn in connection with the organization of BWC Capital under the laws of the State of Indiana, including, but not limited to Secretary of State filing fees and fees for engaging a registered agent on behalf of BWC Capital.

51.     On April 5, 2013, Gereg and The K Family Trust (the "Trust") executed an LLC Membership Interest Assignment Agreement, Assignment of Membership Units, Joinder, Resignation of Manager and Designation of Manager (collectively, the "BWC Capital Membership Assignment") whereby Gereg agreed to assign to the Trust his 100% membership interest in BWC Capital. A true and accurate copy of the BWC Capital Membership Assignment is attached hereto as **Exhibit C**.

52.     Kelly executed the BWC Capital Membership Assignment on behalf of the Trust in his capacity as Trustee.

53.     Pursuant to the BWC Capital Membership Assignment, counsel for the K Family Trust would hold Gereg's executed Assignment of the membership interest in BWC Capital in trust pending consummation of the purchase of the Loan by BWC Capital from Harris, at which time the Assignment of Gereg's membership interest in BWC Capital to the Trust would immediately become effective. (**Exhibit C**, at ¶ 3(a)).

54.     The BWC Capital Membership Assignment names Edward L. Filer of Freeborn as a party to receive notices on behalf of the Trust. (**Exhibit C,** ¶ 5).

55.     On information and belief, Freeborn was designated as the entity that would hold the Assignment of the membership interest in BWC Capital in trust as required by the BWC Capital Membership Assignment.

56.     Freeborn drafted the BWC Capital Membership Assignment while Freeborn was representing the Debtor.

57.     The Debtor was billed by Freeborn for legal services rendered by Freeborn for drafting the BWC Capital Membership Assignment.

58.     On April 5, 2013, Harris executed an Assignment of Loan Documents (the "Loan Assignment") with BWC Capital.  A true and accurate copy of the Loan Assignment is attached hereto as **Exhibit D**.

59.     The Loan Assignment was executed by Gereg, in his capacity as the sole member of BWC Capital. (**Exhibit D**, p. 6).

60.     Pursuant to the Loan Assignment, Harris agreed to assign all of its right, title, and interest in the Loan to BWC Capital in exchange for the payment of a purchase price in the amount of $575,000.00 (the "Purchase Price"). (**Exhibit D**, pp. 1-2).

61.     There is no effective date referenced in the Loan Assignment, however, the Loan Assignment provides that full payment of the Purchase Price is due on or before May 5, 2013. (**Exhibit D**, ¶ 1).

62.     The Loan Assignment provides that the Purchase Price may be paid by BWC Capital with "Checks payable to Debtor" and/or "Debtor's customer payments". (**Exhibit D**, ¶ 1).

63.     The Loan Assignment further provides that "[u]pon timely receipt in full of the Purchase Price and not before [Harris] shall grant, bargain, sell, assign, transfer, convey and set-over to [BWC Capital] without recourse, representation, or warranty of any kind (except as otherwise agreed in this Agreement), all of [Harris'] right, title, and interest in, to and under the Loan Documents". (**Exhibit D, ¶ 4**).

64.     The Loan Assignment contains a clause stating that "should the Purchase Price not be paid in full on or before May 5, 2013, [Harris] shall be entitled to retain all proceeds received prior to May 5, 2013 and shall have no further obligations or liabilities under this Agreement and the Agreement and Assignment shall be null and void." (**Exhibit D, ¶ 11**).

65.     Nothing in the Loan Assignment requires BWC Capital, as assignee, to tender any of its own cash to Harris in order to effectuate the Loan Assignment.

66.     Freeborn participated in the drafting and negotiating of the Loan Assignment to BWC Capital while Freeborn was representing the Debtor.

67.     The Debtor was billed by Freeborn for legal services rendered by Freeborn for drafting and negotiating the Loan Assignment for the benefit of BWC Capital.

68.     The full Purchase Price was paid to Harris on May 2, 2013.

69.     The entire sum of the Purchase Price was paid to Harris from the proceeds of the collection of the Debtor's accounts receivable.

70.     BWC Capital did not tender any of its own cash in order to effectuate the Loan Assignment and acquire the Loan from Harris.

71.     On May 2, 2013, Harris delivered the original documents comprising the Loan to Freeborn, as evidenced by an Acknowledgement of Receipt of Original Loan Documents (the

12

"Acknowledgement"). A true and accurate copy of the Acknowledgement is attached hereto as **Exhibit E**.

72.    The Acknowledgement was executed by **Samuel** A. Lichtenfeld as "agent for Assignee BWC Capital, LLC". (**Exhibit E**).

73.    As of the date of the Acknowledgement, **May 2**, 2013, Samuel A. Lichtenfeld was employed as an attorney by Freeborn and Freeborn was representing the Debtor.

74.    On May 3, 2013, Harris voluntarily dismissed the Harris Replevin Action.

75.    On May 6, 2013, Harris voluntarily dismissed the Harris Breach of Contract Action.

### The April 5, 2013 Change in Terms Agreements

76.    On April 5, 2013, the Debtor purportedly executed a Change in Terms Agreement for the $1.6 million Note in favor of BWC Capital as lender and as assignee of Harris. A true and accurate copy of the Change in Terms Agreement for the $1.6 million Note is attached hereto as **Exhibit F**.

77.    The Change in Terms Agreement for the $1.6 million Note was dated prior to the Assignment of the Loan from Harris to BWC Capital, which did not occur until May 2, 2013, when Harris delivered the original Loan documents to Freeborn as purported agent of BWC Capital while Freeborn was representing the Debtor.

78.    Pursuant to the Change in Terms Agreement for the $1.6 million Note, BWC Capital, as lender, purportedly agreed to extend the maturity of the Loan through May 20, 2013, in exchange for the Debtor's agreement to a Confession of Judgment clause providing as follows:

13

Confession of Judgement: In an Event of Default, and without limitation of any other provision hereof or in the Loan Documents, the Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgement against him, her or it for the unpaid amount of any or all of the outstanding balance due on the Promissory Note applicable to such person or entity as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due after any such payments made under this Promissory Note or the Loan Documents, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Promissory Note, or the applicable Loan Documents, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower hereby waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on the Promissory Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

**(Exhibit F, pp. 1-2).**

79.    On April 5, 2013, the Debtor purportedly executed a Change in Terms Agreement for the $155,625.00 Note in favor of BWC Capital as lender and as assignee of Harris (hereinafter referred to collectively with the April 5, 2013 Change in Terms Agreement for the $1.6 million Note as the "Change in Terms Agreements"). A true and accurate copy of the Change in Terms Agreement for the $155,625.00 Note is attached hereto as **Exhibit G**.

14

80.     The Change in Terms Agreement for the $155,625.00 Note was dated prior to the Assignment of the Loan from Harris to BWC Capital, which did not occur until May 2, 2013, when Harris delivered the original Loan documents to Freeborn as purported agent of BWC Capital while Freeborn was representing the Debtor.

81.     Pursuant to the Change in Terms Agreement for the $155,625.00 Note, BWC Capital purportedly agreed to modify the maturity of the Loan through May 20, 2013, in exchange for the Debtor's agreement to a Confession of Judgment clause providing as follows:

> Confession of Judgement: In an Event of Default, and without limitation of any other provision hereof or in the Loan Documents, the Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgement against him, her or it for the unpaid amount of any or all of the outstanding balance due on the Promissory Note applicable to such person or entity as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due after any such payments made under this Promissory Note or the Loan Documents, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Promissory Note, or the applicable Loan Documents, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney.  Borrower hereby waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect.   No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on the Promissory Note have been paid in full.  Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

(**Exhibit G**, pp. 1-2).

82.    Prior to the execution of the Change in Terms Agreement for the $155,625.00 Note, the existing maturity date for the $155,625.00 Note was August 19, 2013.

83.    Although the Change in Terms Agreements were dated April 5, 2013, they were actually signed by Kelly on or around May 29, 2013 and backdated to April 5, 2013.

84.    Filer advised Kelly to execute the Change in Terms Agreements on May 29, 2013 and backdate the Change in Terms Agreements to April 5, 2013.  *See* e-mail dated May 29, 2013 from Filer to Kelly and Gereg attached hereto as **Exhibit H**.

85.    At the time the Change in Terms Agreements were executed, the "extended" maturity date for the $1.6 million Note had already passed.

86.    The Debtor did not receive any consideration for its agreement to the addition of the Confession of Judgment clause to the $1.6 million Note.

87.    At the time the Change in Terms Agreements were executed, the "extended" maturity date for the $155,625.00 Note had already passed.

88.    The Debtor did not receive any consideration for its agreement to the addition of the Confession of Judgment clause to the $155,625.00 Note.

89.    The Change in Terms Agreements were drafted by Freeborn, at Gereg's direction, while Freeborn was representing the Debtor.

90.    The Debtor was billed by Freeborn for legal services rendered by Freeborn for drafting the Change in Terms Agreements.

91.    Gereg, BWC Capital and/or CRA did not pay Freeborn for any legal services rendered with respect to the drafting of the Change in Terms Agreements.

92.     As of April 5, 2013, Gereg, BWC Capital and/or CRA had not engaged Freeborn as counsel.

## BWC Capital as Secured Lender

93.     On May 1, 2013, Gereg, in his capacity as a principal of CRA sent the Debtor an Invoice seeking compensation for obtaining "financing from BWC Capital, LLC that satisfies Harris Bank principal, interest and late charges that total $1,114,217.14". A true and accurate copy of the May 1, 2013 Invoice is attached hereto as **Exhibit I.**

94.     The total fee sought by CRA pursuant to the May 1, 2013 Invoice was $46,142.00.

95.     CRA did not obtain financing from BWC Capital that satisfied the debt owed to Harris.

96.     BWC Capital did not contribute any money to the Purchase Price paid to Harris for the assignment of the Loan.

97.     On May 1, 2013, Gereg, in his capacity as a principal of CRA, sent the Debtor a Revised Invoice, seeking a reduced fee of $40,000.00. A true and accurate copy of the Revised Invoice is attached hereto as **Exhibit J.**

98.     On information and belief, the Debtor paid CRA $40,000.00 pursuant to the Revised Invoice.

99.     On May 21, 2013, BWC Capital filed a UCC Financing Statement with the Illinois Secretary of State as document number 18270544 (the "BWC Capital UCC") purporting to perfect its security interests in all assets of the Debtor. A true and accurate copy of the UCC Financing Statement is attached hereto as **Exhibit K.**

100.    The BWC Capital UCC provides that the acknowledgement of the filing of the BWC Capital UCC be sent to Freeborn. (**Exhibit K**).

101.    Freeborn drafted and filed the BWC Capital UCC while Freeborn was representing the Debtor.

102.    Gereg, BWC Capital and/or CRA did not pay Freeborn  for any legal services relating to the drafting and/or filing of the BWC Capital UCC.

103.    As of May 21, 2013, Gereg, BWC Capital and/or CRA had not engaged Freeborn as counsel.

104.    The Debtor was billed by Freeborn for legal services rendered by Freeborn for preparing and filing the BWC Capital UCC.

105.    The Debtor was billed by Freeborn for costs advanced by Freeborn in connection with the filing of the BWC Capital UCC, including the Illinois Secretary of State filing fee for the BWC Capital UCC.

106.    On June 18, 2013, BWC Capital filed a Complaint and Confession of Judgment in the Circuit Court of Cook County against the Debtor.

107.    The Confession of Judgment proceeding is commonly referred to as *BWC Capital, LLC as Assignee of BMO Harris Bank, N.A. f/k/a Harris N.A. v. Barsanti Woodwork Corporation*, Circuit Court of Cook County case no. 2013 L 50578 (the "BWC Confession Action"). A true and accurate copy of the Complaint and Confession of Judgment filed in the BWC Confession Action is attached hereto as **Exhibit L**.

108.    In the BWC Confession Action, BWC Capital alleged that the Debtor was in default under the terms of the Loan and sought the entry of judgment against the Debtor for $1,582,955.73 plus interest and costs.

18

109.   The contractual bases which BWC Capital relied upon for its request for a Confession of Judgment were the Confession of Judgment clauses purportedly added to the $1.6 million Note and the $155,625.00 Note under the Change in Terms Agreements.

110.   BWC Capital did not issue any formal notice of default prior to initiating the BWC Confession Action.

111.   Kelly was not named as a Defendant in the BWC Confession Action.

112.   Barsanti was not named as a Defendant in the BWC Confession Action.

113.   The Complaint filed by BWC Capital in the BWC Confession Action was signed by Vivek Jayaram of the Jayaram Law Group (collectively, "Jayaram") as counsel to BWC Capital.

114.   Freeborn drafted the Complaint filed by BWC Capital in the BWC Confession Action for Jayaram's signature while Freeborn was representing the Debtor.

115.   The Debtor was billed by Freeborn for legal services rendered by Freeborn for drafting the Complaint and related documentation filed by BWC Capital in the BWC Confession Action.

116.   The Debtor was billed by Freeborn for costs advanced by Freeborn in connection with the filing of the BWC Confession Action, including the filing fee charged by the Clerk of the Circuit Court of Cook County for the filing of the Complaint.

117.   Jayaram never had any contact with Gereg or any other representative of BWC Capital regarding the BWC Confession Action until June 17, 2013.

118.   On June 18, 2013, Freeborn filed an Appearance on behalf of the Debtor in the BWC Confession Action.

119. The Debtor did not file an Answer to the Complaint filed in the BWC Confession Action.

120. The Debtor did not assert any defenses, whether affirmative or otherwise, in response to the BWC Confession Action.

121. The Debtor did not file a Motion to Dismiss the BWC Confession Action.

122. On July 3, 2013, Judgment was entered in the BWC Confession Action in the amount of $1,582,956.00 in favor of BWC Capital and against the Debtor (the "Judgment Order"). A true and accurate copy of the Judgment Order entered in the BWC Confession Action is attached hereto as **Exhibit M**.

123. Freeborn drafted the Judgment Order which was ultimately entered in the BWC Confession Action in favor of BWC Capital while Freeborn was representing the Debtor.

124. The Debtor was billed by Freeborn for legal services rendered by Freeborn for drafting the Judgment Order which was ultimately entered in the BWC Confession Action.

125. The Debtor was billed by Freeborn for costs advanced by Freeborn relating to enforcement of the Judgment Order by BWC Capital, including the Cook County Recorder of Deeds filing fee for recording a certified copy of the Judgment Order.

126. On July 3, 2013, the Debtor executed an Assignment and Conveyance of Title purporting to transfer all of the assets of the Debtor to BWC Capital (the "Assignment and Conveyance"). A true and accurate of the Assignment and Conveyance of Title is attached hereto as **Exhibit N**.

127. As of July 3, 2013, there was no Court Order directing the Debtor to assign any of its assets to BWC Capital.

128.   On July 11, 2013, BWC Capital filed a Citation to Discover Assets against the Debtor in the BWC Confession Action (the "Citation"). A true and accurate copy of the Citation is attached hereto as **Exhibit O**.

129.   The Citation was signed by Jayaram as counsel for BWC Capital.

130.   Freeborn drafted the Citation while Freeborn was representing the Debtor.

131.   The Debtor was billed by Freeborn for legal services rendered by Freeborn for drafting the Citation.

132.   On July 11, 2013, BWC Capital filed a Motion for Assignment and Conveyance of Title in the BWC Confession Action. A true and accurate copy of the Motion for Assignment and Conveyance of Title is attached hereto as **Exhibit P**.

133.   In the Motion for Assignment and Conveyance of Title, BWC Capital sought the entry of an Order directing the Debtor to execute an assignment of all choses in action and a conveyance of title of its assets to BWC Capital in partial satisfaction of the Judgment Order entered in the BWC Confession Action.

134.   Freeborn drafted the Motion for Assignment and Conveyance of Title while Freeborn was representing the Debtor.

135.   The Debtor was billed by Freeborn for legal services rendered by Freeborn for drafting the Motion for Assignment and Conveyance of Title.

136.   On July 18, 2013 an Order was entered in the BWC Confession Action directing the Debtor to execute an assignment of any choses in action and to convey title to its assets to BWC Capital. A true and accurate copy of the Order granting BWC Capital's Motion for Assignment and Conveyance of Title is attached hereto as **Exhibit Q**.

137.    Freeborn drafted the Order granting BWC Capital's Motion for Assignment and Conveyance of Title while Freeborn was representing the Debtor.

138.    Gereg, BWC Capital and/or CRA did not pay Freeborn to draft any documents relating to the BWC Confession Action.

139.    Gereg, BWC Capital and/or CRA never engaged Freeborn as counsel at any time during the BWC Confession Action.

**The Debtor's Business is Moved to Barsanti Millwork, LLC**

140.    On June 7, 2013 a company called Basanti Millworker, LLC was organized under the laws of the State of Indiana.

141.    Thereafter, on June 7, 2013, a Certificate of Amendment was issued by the Secretary of State of Indiana changing the name of *Basanti* Millworker, LLC to *Barsanti* Millworker, LLC.

142.    Thereafter, on June 10, 2013, a Certificate of Amendment was issued by the Secretary of State of Indiana changing the name of Barsanti *Millworker*, LLC to Barsanti *Millworks*, LLC.

143.    Thereafter, on June 11, 2013, a Certificate of Amendment was issued by the Secretary of State of Indiana changing the name of Barsanti *Millworks*, LLC to Barsanti *Millwork*, LLC (hereinafter referred to collectively with Basanti Millworker, LLC, Barsanti Millworker, LLC and Barsanti Millworks, LLC as "Barsanti Millwork").

144.    Freeborn prepared all of the necessary documentation for Barsanti Millwork to be organized as an Indiana limited liability company while Freeborn was representing the Debtor.

145.    Freeborn prepared all of the necessary documentation for Barsanti Millwork to apply for a federal tax identification number from the Internal Revenue Service while Freeborn was representing the Debtor.

146.    Freeborn drafted the Operating Agreement for Barsanti Millwork while Freeborn was representing the Debtor.

147.    The Debtor was billed by Freeborn for legal services rendered by Freeborn for preparing the documentation for Barsanti Millwork to be organized pursuant to the laws of the State of Indiana.

148.    The Debtor was billed by Freeborn for legal services rendered by Freeborn for preparing documentation for Barsanti Millwork to apply for a federal tax identification number.

149.    The Debtor was billed by Freeborn for costs advanced by Freeborn in connection with the organization of Barsanti Millwork pursuant to the laws of the State of Indiana, including the Indiana Secretary of State filing fee for Articles of Organization, the Indiana Secretary of State filing fees for several Certificates of Amendment and the engagement of statutory representation in Indiana for Barsanti Millwork.

150.    Gereg, Barsanti Millwork and/or CRA did not pay Freeborn to draft the documents for the organization of Barsanti Millwork.

151.    As of June 2013, Gereg, Barsanti Millwork and/or CRA had not engaged Freeborn as counsel.

152.    At the time it was organized, Gereg was the owner and sole member of Barsanti Millwork.

153.    At the time it was organized, the sole manager of Barsanti Millwork was an individual named Ralph Prawat.

23

154.    Freeborn and/or Filer selected Ralph Prawat as the sole manager of Barsanti Millwork at the time of its organization.

155.    Ralph Prawat is the father-in-law of Filer, the attorney at Freeborn primarily responsible for representation of the Debtor pursuant to the February 13, 2013 Engagement Letter between Freeborn and the Debtor. *See* **Exhibit A**.

156.    Barsanti Millwork is in the business of providing services relating to fabrication of customized woodwork and millwork and maintains its principal office at 3838 West 51st Street, Chicago, Illinois, the same business premises utilized by the Debtor.

157.    Barsanti Millwork's business is substantially similar to the Debtor's business.

158.    Kelly is purportedly employed as a business development/sales representative of Barsanti Millwork.

159.    Freeborn advised Gereg to hire Kelly as an employee or as a consultant of Barsanti Millwork, rather than as an officer or owner, until the conclusion of the Debtor's Chapter 7 case so that "nobody could argue that Kelly has a meaningful stake in Barsanti Millwork."

160.    Kelly is in charge of the day-to-day business operations of Barsanti Millwork.

161.    Kelly purportedly receives an annual salary of $125,000.00 from Barsanti Millwork.

162.    On or around June 13, 2013, Gereg and the Trust executed an LLC Membership Interest Assignment Agreement, Assignment of Membership Units, Joinder, Resignation of Manager and Designation of Manager (collectively, the "Barsanti Millwork Membership Assignment") whereby Gereg agreed to assign to the Trust his 100% membership interest in

Barsanti Millwork. A true and accurate copy of the Barsanti Millwork Membership Assignment is attached hereto as **Exhibit R**.

163.    Kelly executed the Barsanti Millwork Membership Assignment on behalf of the Trust in his capacity as Trustee.

164.    On information and belief, Kelly is both trustee and sole beneficiary with power of direction, of the Trust.

165.    Pursuant to the Barsanti Millwork Membership Assignment, counsel for the Trust would hold Gereg's executed Assignment of the membership interest in Barsanti Millwork in trust "until the Parties hereto agree that Assignee's counsel shall release said Assignment from trust", at which time the Trust would deliver $10,000.00 to Gereg, so that the Assignment of Gereg's membership interest in Barsanti Millwork would immediately become effective. **(Exhibit R**, at ¶ 3(a)).

166.    The Barsanti Millwork Membership Assignment names Edward L. Filer of Freeborn as a party to receive notices on behalf of the Trust. **(Exhibit R,** ¶ 5).

167.    On information and belief, Freeborn was designated as the entity that would hold the Assignment of the membership in Barsanti Millwork in trust as required by the Barsanti Millwork Membership Assignment.

168.    Freeborn drafted the Barsanti Millwork Membership Assignment while Freeborn was representing the Debtor.

169.    The Debtor was billed by Freeborn for legal services rendered by Freeborn for drafting the Barsanti Millwork Membership Assignment.

170.    Prior to and during June of 2013, Kelly met with representatives of Turner Construction Company on behalf of Barsanti Millwork regarding Barsanti Millwork's retention

as a contractor to provide services for customized woodwork and/or millwork on a project known as the "U of C Project".

171.   On or around June 24, 2013, Barsanti Millwork was awarded the contract for the U of C Project by Turner Construction Company.

172.   As of June 24, 2013, the value of the contract for the U of C Project was approximately $2.3 million.

173.   At the time that Kelly negotiated the contract for the U of C Project, BWC Capital had not obtained a judgment against the Debtor.

174.   At the time that Kelly negotiated the contract for the U of C Project, the Debtor had not assigned or otherwise conveyed its assets to BWC Capital or any other third party.

175.   At the time that Kelly negotiated the contract for the U of C Project, Barsanti Millwork did not have any employees.

176.   At the time that Kelly negotiated the contract for the U of C Project, Barsanti Millwork did not own any equipment necessary for the fabrication of customized woodwork.

177.   At the time that Kelly negotiated the contract for the U of C Project, Barsanti Millwork did not lease any equipment necessary for the fabrication of customized woodwork.

178.   As of June 26, 2013, Kelly was negotiating at least two (2) additional contracts with Turner Construction Company in addition to the U of C Project.

179.   As of June 26, 2013, it was Kelly's intention to use the Debtor's employees under the name Barsanti Millwork to perform the U of C Project.

180.   On or around August 1, 2013, Barsanti Millwork and BWC Capital executed an Equipment Lease (the "Equipment Lease"), whereby Barsanti Millwork agreed to lease "all furniture, fixtures and equipment" owned by BWC Capital from BWC Capital.

26

181.   On information and belief, the equipment, furniture, and fixtures leased from BWC Capital by Barsanti Millwork comprise substantially all of the assets conveyed by the Debtor to BWC Capital by virtue of the BWC Confession Action and Assignment and Conveyance of Title executed in connection therewith.

## COUNT I – FRAUDULENT TRANSFER (Constructive Fraud)
### 11 U.S.C. §§ 548 & 550
*Against BWC Capital, LLC and Barsanti Millwork, LLC*

182.   The Trustee hereby incorporates and re-alleges paragraphs 1 through 181 of this Complaint as paragraph 182 of this Count I.

183.   The Debtor executed the Assignment and Conveyance on July 3, 2013.

184.   Pursuant to the Assignment and Conveyance, on or around July 3, 2013, the Debtor transferred substantially all of its assets to BWC Capital.

185.   The Debtor was insolvent on the date that the Assignment and Conveyance was executed and when the Debtor's assets were transferred to BWC Capital.

186.   The Debtor received less than reasonably equivalent value in exchange for its execution of the Assignment and Conveyance and transfer of its assets to BWC Capital.

187.   At the time the Debtor executed the Assignment and Conveyance, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was unreasonably small capital.

188.   Subsequent to the transfer of all of the Debtor's assets to BWC Capital, BWC Capital and Barsanti Millwork executed the Equipment Lease, whereby the assets purportedly owned by BWC Capital were purportedly leased to Barsanti Millwork so that Barsanti Millwork could operate as a fabricator of custom woodwork and millwork.

27

189. Under the Equipment Lease, Barsanti Millwork is required to pay BWC Capital a monthly rental payment of $5,000.00.

190. Barsanti Millwork has purportedly never paid BWC Capital pursuant to the Equipment Lease.

191. The transfer of the Debtor's assets to BWC Capital and/or Barsanti Millwork is voidable as a fraudulent transfer, as BWC Capital and Barsanti Millwork are immediate and/or mediate transferees, taking with knowledge of the voidability of the transfer.

192. The Trustee is entitled to avoid the transfer of the Debtor's assets to BWC Capital and/or Barsanti Millwork pursuant to 11 U.S.C. § 548(a) and to recover that transfer pursuant to 11 U.S.C. § 550.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

   (a)   Enter Judgment in favor of the Trustee and against BWC Capital, LLC and Barsanti Millwork, LLC in the amount representing the value of the Debtor's transfer of its assets to BWC Capital and/or Barsanti Millwork, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages; and

   (b)   Grant such other and further relief as this Court deems just under the circumstances.

### COUNT II – FRAUDULENT TRANSFER (Actual Fraud)
### 11 U.S.C. §§ 548 and 550
*Against BWC Capital, LLC and Barsanti Millwork, LLC*

193. The Trustee hereby incorporates and re-alleges paragraphs 1 through 192 of this Complaint as paragraph 193 of this Count II.

28

194.   The Assignment of Conveyance was executed by the Debtor and the Debtor's assets were transferred to BWC Capital and/or Barsanti Millwork with actual intent to hinder, delay or defraud the Debtor's creditors in existence as of the date of the Assignment and Conveyance.

195.   The following badges of fraud existed in connection with the Debtor's execution of the Assignment and Conveyance and subsequent transfer of its assets to BWC Capital and/or Barsanti Millwork:

(a)   The transfer of the Debtor's assets was made to BWC Capital and/or Barsanti Millwork for the benefit of insiders of the Debtor, namely, Kelly and Gereg;

(b)   The same owner of the Debtor (Kelly) retained constructive possession and control of the Debtor's assets following the transfer to BWC Capital and/or Barsanti Millwork;

(c)   The assets transferred to BWC Capital and/or Barsanti Millwork amounted to substantially all of the Debtor's assets;

(d)   The Debtor received inadequate consideration in respect to the value of the assets transferred;

(e)   The Debtor was insolvent because of, and become insolvent shortly before, the transfer;

(f)   The transfer was made to BWC Capital and/or Barsanti Millwork, which were wholly owned at the time of the transfer by the Debtor's retained consultant, Gereg;

(g)   The fraudulent nature of the transfer was concealed by Kelly and Gereg;

(h)   The Debtor transferred the essential assets of the business to BWC Capital, a lienor who transferred the assets to an insider of the Debtor (Kelly), as evidenced by the BWC Capital Membership Assignment and the Barsanti Millwork Membership Assignment.

196.    The Trustee is entitled to avoid the transfer of the Debtors assets to BWC Capital and/or Barsanti Millwork pursuant to 11 U.S.C. § 548(a) and to recover that transfer pursuant to 11 U.S.C. § 550.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

(a)    Enter Judgment in favor of the Trustee and against BWC Capital, LLC and Barsanti Millwork, LLC in the amount representing the value of the Debtor's transfer of its assets to BWC Capital and/or Barsanti Millwork, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages; and

(b)    Grant such other and further relief as this Court deems just under the circumstances.

### COUNT III – FRAUDULENT TRANSFER (Constructive Fraud)
### 11 U.S.C. §§ 544 and 740 ILCS 160/5(a)
*Against BWC Capital, LLC and Barsanti Millwork, LLC*

197.    The Trustee hereby incorporates and re-alleges paragraphs 1 through 196 of this Complaint as paragraph 197 of this Count III.

198.    The transfer of the Debtors assets to BWC Capital and/or Barsanti Millwork occurred within a four (4) year period prior to the Petition Date.

199.    The Debtor was insolvent on the date that the Assignment and Conveyance was executed and when the Debtor's assets were transferred to BWC Capital.

200.    The Debtor received less than reasonably equivalent value in exchange for its execution of the Assignment and Conveyance and transfer of its assets to BWC Capital.

201.   At the time the Debtor executed the Assignment and Conveyance, the Debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small capital in relation to the business or transaction.

202.   Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor which is voidable under applicable law.

203.   The transfer of the Debtor's assets to BWC Capital and/or Barsanti Millwork is voidable as a fraudulent transfer pursuant to 11 U.S.C. § 544(b) and the Illinois Fraudulent Transfer Act, 740 ILCS 160/5(a)(2) and the Trustee may recover the value of that transfer pursuant to 11 U.S.C. § 550.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

   (a)   Enter Judgment in favor of the Trustee and against BWC Capital, LLC and Barsanti Millwork, LLC in the amount representing the value of the Debtor's transfer of its assets to BWC Capital and/or Barsanti Millwork, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages; and

   (b)   Grant such other and further relief as this Court deems just under the circumstances.

### COUNT IV – FRAUDULENT TRANSFER (Actual Fraud)
### 11 U.S.C. §§ 544 and 740 ILCS 160/5(a)
*Against BWC Capital, LLC and Barsanti Millwork, LLC*

204.   The Trustee hereby incorporates and re-alleges paragraphs 1 through 203 of this Complaint as paragraph 204 of this Count IV.

31

205.    The Assignment of Conveyance was executed by the Debtor and the Debtor's assets were transferred to BWC Capital and/or Barsanti Millwork with actual intent to hinder, delay or defraud the Debtor's creditors in existence as of the date of the Assignment and Conveyance.

206.    The following badges of fraud existed in connection with the Debtor's execution of the Assignment and Conveyance and subsequent transfer of its assets to BWC Capital and/or Barsanti Millwork:

(a)    The transfer of the Debtor's assets was made to BWC Capital and/or Barsanti Millwork for the benefit of insiders of the Debtor, namely, Kelly and Gereg;

(b)    The same owner of the Debtor (Kelly) retained constructive possession and control of the Debtor's assets following the transfer to BWC Capital and/or Barsanti Millwork;

(c)    The assets transferred to BWC Capital and/or Barsanti Millwork amounted to substantially all of the Debtor's assets;

(d)    The Debtor received inadequate consideration in respect to the value of the assets transferred;

(e)    The Debtor was insolvent because of, and become insolvent shortly before the transfer;

(f)    The transfer was made to BWC Capital and/or Barsanti Millwork, which were wholly owned at the time of the transfer by the Debtor's retained consultant, Gereg;

(g)    The fraudulent nature of the transfer was concealed by Kelly and Gereg;

(h)    The Debtor transferred the essential assets of the business to BWC Capital, a lienor who transferred the assets to an insider of the Debtor (Kelly), as evidenced by the BWC Capital Membership Assignment and the Barsanti Millwork Membership Assignment.

207.    The transfer of the Debtor's assets to BWC Capital and/or Barsanti Millwork is voidable as a fraudulent transfer pursuant to 11 U.S.C. § 544(b) and the Illinois Fraudulent

Transfer Act, 740 ILCS 160/5(a)(1) and the Trustee may recover the value of that transfer pursuant to 11 U.S.C. § 550.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

(a)    Enter Judgment in favor of the Trustee and against BWC Capital, LLC and Barsanti Millwork, LLC in the amount representing the value of the Debtor's transfer of its assets to BWC Capital and/or Barsanti Millwork, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages; and

(b)    Grant such other and further relief as this Court deems just under the circumstances.

### COUNT V – FRAUDULENT TRANSFER – 11 U.S.C. §§ 548 & 550
*Against Robert Gereg*

208.    The Trustee hereby incorporates and re-alleges paragraphs 1 through 207 of this Complaint as paragraph 208 of this Count V.

209.    Following the assignment of the Loan to BWC Capital, the Debtor paid Gereg and/or CRA a consulting fee of $40,000.00 (the "CRA Fee") on the basis that "CRA has arranged and [the Debtor has] accepted financing from BWC Capital, LLC that satisfies Harris Bank principal, interest and late charges that total $1,114,217.14."

210.    BWC Capital, did not, in fact, provide any financing to the Debtor for the satisfaction of the Harris Loan.

211.    The aggregate impact of Gereg's and/or CRA's provision of "consulting" services to the Debtor was that Gereg and/or CRA was paid $40,000.00 so that Gereg, through BWC Capital, could acquire the assets of the Debtor free and clear of the claims of the Debtor's creditors.

33

212.   The Debtor received less than reasonably equivalent value for the payment of the CRA Fee.

213.   At all times between February 1, 2013 and the Petition Date, the Debtor was insolvent.

214.   At the time the Debtor paid the CRA Fee, the Debtor was engaged in business or was about to engage in business for which any property remaining with the Debtor was unreasonably small capital.

215.   The CRA Fee was paid by the Debtor with actual intent to hinder, delay or defraud the Debtor's creditors.

216.   The Trustee is entitled to avoid the Debtor's payment of the CRA Fee pursuant to 11 U.S.C. §§ 548(a) and (b) and to recover any and all payments made by the Debtor to CRA pursuant to 11 U.S.C. § 550.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

   (a)   Enter Judgment in favor of the Trustee and against Robert Gereg in the amount of $40,000.00, plus costs, attorneys' fees, interest and punitive damages; and

   (b)   Grant such other and further relief as this Court deems just under the circumstances.

### COUNT VI – FRAUDULENT TRANSFER
### 11 U.S.C. §§ 544 & 550 and 740 ILCS 160/5(a)
*Against Robert Gereg*

217.   The Trustee hereby incorporates and re-alleges paragraphs 1 through 216 of this Complaint as paragraph 217 of this Count VI.

34

218.    The Debtor's payment of the CRA fee occurred in the four (4) year period leading up to the Petition Date.

219.    BWC Capital, did not provide any financing to the Debtor for the satisfaction of the Loan.

220.    The aggregate impact of Gereg and/or CRA's provision of "consulting" services to the Debtor was that Gereg and/or CRA was paid $40,000.00 so that Gereg, through BWC Capital and/or Barsanti Millwork, could acquire the assets of the Debtor free and clear of the claims of the Debtor's creditors.

221.    The Debtor received less than reasonably equivalent value for the payment of the CRA Fee.

222.    At the time that the Debtor paid the CRA Fee, the Debtor was engaged or was about to engage in a business for which the remaining assets of the Debtor were unreasonably small in relation to the business.

223.    The CRA Fee was paid by the Debtor with actual intent to hinder, delay or defraud the Debtor's creditors.

224.    Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor which is voidable under applicable law.

225.    The Debtor's payment of the CRA Fee is voidable as a fraudulent transfer pursuant to 11 U.S.C. § 544(b) and the Illinois Fraudulent Transfer Act, 740 ILCS 160/5(a)(1) and (a)(2) and the Trustee may recover the value of those transfers pursuant to 11 U.S.C. § 550.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

        (a)    Enter Judgment in favor of the Trustee and against Robert Gereg in the amount of $40,000.00, plus costs, attorneys' fees, interest and punitive damages; and

        (b)    Grant such other and further relief as this Court deems just under the circumstances.

### COUNT VII – FRAUDULENT TRANSFER – 11 U.S.C. §§ 548 & 550
*Against Freeborn & Peters, LLP*

226.    The Trustee hereby incorporates and re-alleges paragraphs 1 through 225 of this Complaint as paragraph 226 of this Count VII.

227.    The Debtor formally hired Freeborn as its attorneys on or around February 13, 2013 to provide legal services in connection with the Harris State Court Lawsuits.

228.    On or around July 24, 2013, the Debtor paid Freeborn $5,181.65 in partial payment of amounts purportedly owed to Freeborn for legal fees and costs.

229.    Over the course of Freeborn's representation of the Debtor, Freeborn did not, in fact, provide any tangible benefit to the Debtor.

230.    During Freeborn's representation of the Debtor, Freeborn engaged in conduct for the benefit of BWC Capital, Barsanti Millwork, Kelly and Gereg and to the detriment of the Debtor for the purpose of transferring the Debtor's assets to a new entity without providing for the claims of the Debtor's creditors.

231.    The aggregate impact of Freeborn's representation of the Debtor was that the Debtor was stripped of its assets by BWC Capital, as facilitated by Freeborn, so that BWC

36

Capital and/or Barsanti Millwork could acquire the assets of the Debtor free and clear of the claims of the Debtor's creditors.

232.  Any and all amounts paid by the Debtor to Freeborn were paid with actual intent to hinder, delay or defraud the Debtor's creditors.

233.  The Debtor received less than reasonably equivalent value for the payment of any and all amounts to Freeborn between February 1, 2013 and the Petition Date.

234.  The Debtor was insolvent at the time the Debtor made any and all payments to Freeborn between February 1, 2013 and the Petition Date.

235.  At the time that the Debtor paid any amounts to Freeborn between February 1, 2013 and the Petition Date, the Debtor was engaged in business, or was about to engage in business for which any property remaining with the Debtor was unreasonably small capital.

236.  The Trustee is entitled to avoid the Debtor's payment of any and all amounts paid to Freeborn between February 1, 2013 and the Petition Date pursuant to 11 U.S.C. § 548(a) and (b) and to recover any and all such payments made by the Debtor to Freeborn pursuant to 11 U.S.C. § 550.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

    (a)    Enter Judgment in favor of the Trustee and against Freeborn & Peters, LLP in an amount to be proven at trial, but not less than $5,181.65, plus costs, attorneys' fees, interest and punitive damages; and

    (b)    Grant such other and further relief as this Court deems just under the circumstances.

37

## COUNT VIII – FRAUDULENT TRANSFER
### 11 U.S.C. §§ 544 & 550 and 740 ILCS 160/5(a)
*Against Freeborn & Peters, LLP*

237.   The Trustee hereby incorporates and re-alleges paragraphs 1 through 236 of this Complaint as paragraph 237 of this Count VIII.

238.   The Debtor formally hired Freeborn as its attorneys on or around February 13, 2013 to provide legal services in connection with the Harris State Court Lawsuits.

239.   On or around July 24, 2013, the Debtor paid Freeborn $5,181.65 in partial payment of amounts owed to Freeborn for legal fees and costs.

240.   Over the course of Freeborn's representation of the Debtor, Freeborn did not, in fact, provide any tangible benefit to the Debtor.

241.   During Freeborn's representation of the Debtor, Freeborn engaged in conduct for the benefit of BWC Capital, Barsanti Millwork, Kelly and Gereg and to the detriment of the Debtor for the purpose of putting the Debtor out of business.

242.   The aggregate impact of Freeborn's representation of the Debtor was that the Debtor was stripped of its assets by BWC Capital, as facilitated by Freeborn, so that BWC Capital and Barsanti Millwork could acquire the assets of the Debtor free and clear of the claims of the Debtor's creditors.

243.   Any and all amounts paid by the Debtor to Freeborn were paid with actual intent to hinder, delay or defraud the Debtor's creditors.

244.   The Debtor received less than reasonably equivalent value for the payment of any and all amounts to Freeborn between February 1, 2013 and the Petition Date.

245.   The Debtor was insolvent at the time the Debtor made any and all payments to Freeborn between February 1, 2013 and the Petition Date.

246.   At the time that the Debtor paid any amounts to Freeborn between February 1, 2013 and the Petition Date, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction for which any property remaining with the Debtor was unreasonably small in relation to the business or transaction.

247.   Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor which is voidable under applicable law.

248.   The Debtor's payment of the CRA Fee is voidable as a fraudulent transfer pursuant to 11 U.S.C. § 544(b) and the Illinois Fraudulent Transfer Act, 740 ILCS 160/5(a)(1) and (a)(2) and the Trustee may recover the value of those transfers pursuant to 11 U.S.C. § 550.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

(a)   Enter Judgment in favor of the Trustee and against Freeborn & Peters, LLP in an amount to be proven at trial, but not less than $5,181.65, plus costs, attorneys' fees, interest and punitive damages; and

(b)   Grant such other and further relief as this Court deems just under the circumstances.

### COUNT IX – BREACH OF FIDUCIARY DUTY
*Against Paul Kelly*

249.   The Trustee hereby incorporates and re-alleges paragraphs 1 through 248 of this Complaint as paragraph 249 of this Count IX.

250.   The Debtor was insolvent at all times from February 1, 2013 through the Petition Date.

39

251.    Kelly, as the president and sole shareholder of the Debtor owed a fiduciary duty of loyalty and good faith to the Debtor and, due to the Debtor's insolvency, its creditors.

252.    Kelly participated in a scheme whereby the Debtor's accounts receivable were used for the benefit of BWC Capital to purchase the Loan from Harris Bank at no cost to BWC Capital or BWC Capital's owners.

253.    Thereafter, Kelly executed the Change in Terms Agreements, wherein the Debtor agreed to Confession of Judgment clauses in favor of BWC Capital which eventually formed the basis for the BWC Confession Action.

254.    The Confession of Judgment clauses contained in the Change in Terms Agreements were given to BWC Capital by the Debtor without consideration, because the Change in Terms Agreements were executed on or around May 29, 2013 and backdated to April 5, 2013 to make it appear as though BWC Capital extended the maturity date of the $1.6 million Note and the $155,625.00 Note through May 20, 2013.

255.    Prior to the organization of Barsanti Millwork, while the Debtor was still operating, Kelly negotiated contracts for the fabrication of custom woodwork in the name of Barsanti Millwork rather than the Debtor.

256.    As a result of Kelly's efforts in negotiating on behalf of Barsanti Millwork, Barsanti Millwork was awarded the contract for the U of C Project, valued at $2.3 million, on June 24, 2013.

257.    As of June 24, 2013, the Debtor was still in possession of all of its assets, including the equipment and machinery necessary to provide custom woodwork and/or millwork services for the U of C Project.

40

258.    As of June 24, 2013, Barsanti Millwork did not own any of the necessary equipment and/or machinery necessary to provide custom woodwork and/or millwork services for the U of C Project.

259.    By virtue of the BWC Capital Membership Assignment and the Barsanti Millwork Membership Assignment, Kelly may assert that he currently owns or has the right to own all of the tangible and intangible assets of the Debtor free and clear of the claims of the Debtor's creditors.

260.    Kelly took affirmative steps throughout the course of the BWC Confession Action that allowed BWC Capital and/or Barsanti Millwork to obtain title to all of the assets of the Debtor without resistance from the Debtor, including, but not limited to: (i) engaging Freeborn for the purpose of organizing BWC Capital and Barsanti Millwork; (ii) executing and backdating the Change in Terms Agreements which added Confession of Judgment clauses to the $1.6 million Note and the $155,625.00 Note which ultimately formed the basis for the BWC Confession Action; (iii) allowing Freeborn (*Debtor's* counsel) to draft documents necessary for BWC Capital to obtain a judgment in the BWC Confession Action; (iv) deciding not to defend the BWC Confession Action; (v) executing the Assignment and Conveyance contemporaneous with the entry of Judgment in the BWC Confession Action; and (vi) allowing BWC Capital to obtain a Court Order directing the Debtor to execute an Assignment and Conveyance of Title despite the fact that Kelly had already executed the Assignment and Conveyance on behalf of the Debtor.

261.    By participating in this scheme, Kelly acted in his own self-interest to: (i) limit his personal exposure as a guarantor of the Loan; (ii) limit his personal exposure to the Debtor's union(s) and federal and state taxing authorities for the Debtor's activities; (iii) obtain the right to

41

own the tangible and intangible assets of the Debtor free and clear of the claims of the Debtor's

creditors; and (iv) ensure that he would participate in the ongoing business of Barsanti Millwork

upon the cessation of operations by the Debtor.

262. Kelly breached the duties that he owed to the Debtor and the Debtor's creditors.

263. As a proximate result of the breaches of fiduciary duties described herein, the

Debtor was unable to pay its creditors.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as

Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully

requests that this Court:

(a) Enter judgment in favor of the Trustee and against Paul Kelly in the amount of damages caused by his breach of fiduciary duty, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages; and

(b) Grant such other and further relief as this Court deems just under the circumstances.

## COUNT X – BREACH OF FIDUCIARY DUTY
### *Against Robert Gereg*

264. The Trustee hereby incorporates and re-alleges paragraphs 1 through 263 of this

Complaint as paragraph 264 of this Count X.

265. The Debtor retained Gereg and CRA as its trusted consultant to:

- Investigate financing alternatives, and provide the Debtor with an analysis of the various programs and opportunities available;

- Assist with the preparation of a business plan for the Debtor's requirements that includes marketing, management, and financial data as required for any financing application, or presentation to selected financing sources;

- Secure Investor, Lender or Credit Guarantor interest, as required, to successfully conclude the transaction;

- Assist in the preparation of any Investor, Lender, Credit Guarantor or Governmental Loan Guarantee loan applications, where required;

- Assist in finalizing commitments from any outside source, and assist in the closing of the transaction(s).

266.   As the Debtor's consultant, Gereg and CRA had a fiduciary duty to act on the Debtor's behalf with respect to all matters, including, but not limited to negotiating with Harris regarding the Loan.

267.   Gereg and CRA accepted the Debtor's trust, but then betrayed it by organizing BWC Capital, negotiating the Assignment of Loan Documents to BWC Capital from Harris, allowing BWC Capital to step into the shoes of the Debtor's secured lender at no cost to Gereg or BWC Capital, and foreclosing upon all of the assets of the Debtor.

268.   By contracting with Harris for the benefit of BWC Capital, obtaining the Loan from Harris, and foreclosing on the assets of the Debtor, Gereg acted in his own self-interest when he should have been acting on behalf of the Debtor.

269.   The Debtor and its creditors suffered damages which arose as a proximate result of Gereg's self-dealing and breaches of fiduciary duty described herein.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court enter an Order:

(a)   Entering judgment in favor of the Trustee and against Robert Gereg in the amount of damages caused by his breach of fiduciary duty, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages; and

(b)   Granting such other and further relief as this Court deems just under the circumstances.

## COUNT XI – DEPRIVATION OF CORPORATE OPPORTUNITY
*Against Robert Gereg, Paul Kelly, BWC Capital, LLC and Barsanti Millwork, LLC*

270.    The Trustee hereby re-alleges paragraphs 1 through 269 of this Complaint as paragraph 270 of this Count XI.

271.    At all times relevant hereto, Kelly was the President and sole shareholder of the Debtor.

272.    In his capacity as President and sole shareholder of the Debtor, Kelly owed the Debtor and (as a result of the Debtor's insolvency) the Debtor's creditors fiduciary duties, including a duty of care and a duty of loyalty.

273.    At all times from March 7, 2013 through August 26, 2013, Gereg and CRA were employed as a consultant by the Debtor.

274.    In his capacity as the Debtor's trusted consultant, Gereg owed the Debtor fiduciary duties, including a duty of care and a duty of loyalty.

275.    In April of 2013, while the Debtor was still an operating entity, Kelly and Gereg organized BWC Capital for the purpose of acquiring the Loan from Harris and replacing Harris as the Debtor's secured lender.

276.    Through the actions of Gereg and Kelly, BWC Capital used $575,000.00 of the Debtor's money to purchase the Loan from Harris.

277.    By allowing BWC Capital, rather than the Debtor, to use the Debtor's funds to purchase the Loan, Gereg and Kelly misappropriated the Debtor's property for the benefit of BWC Capital and to the detriment of the Debtor and its creditors.

278.   By allowing BWC Capital, rather than the Debtor, to acquire the Loan from Harris, Gereg and Kelly allowed BWC Capital to take advantage of business opportunities belonging to the Debtor.

279.   In May and June of 2013, while the Debtor was still an operating entity, Kelly and Gereg negotiated contracts for the fabrication of custom woodwork with various parties for the benefit of Barsanti Millwork to the exclusion of the Debtor.

280.   On June 7, 2013, Gereg and Kelly organized Barsanti Millwork to operate as a company in the business of providing construction services relating to customized woodwork and/or millwork.

281.   As a result of Kelly's and Gereg's efforts in negotiating on behalf of Barsanti Millwork, Barsanti Millwork was awarded the contract for the U of C Project, valued at $2.3 million, on June 24, 2013.

282.   As of June 24, 2013, the Debtor was still in possession of all of its assets, including the equipment and machinery necessary to provide custom woodwork and/or millwork services.

283.   As of June 24, 2013, Barsanti Millwork did not own any of the necessary equipment and/or machinery necessary to provide custom woodwork and/or millwork services for the U of C Project.

284.   By allowing Barsanti Millwork, rather than the Debtor, to negotiate and obtain the contract for the U of C Project, Gereg and Kelly misappropriated the Debtor's property for the benefit of Barsanti Millwork and to the detriment of the Debtor.

285.    By causing Barsanti Millwork, rather than the Debtor, to negotiate and obtain the contract for the U of C Project, Gereg and Kelly allowed Barsanti Millwork to take advantage of a business opportunity belonging to the Debtor.

286.    The Debtor suffered damages which arose as a proximate result of Kelly's and Gereg's deprivation of the Debtor's corporate opportunities to: (1) acquire the Loan from Harris; and (2) negoaitate and obtain the contract for the U of C Project.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court enter an Order:

(a)    Entering judgment in favor of the Trustee and against Paul Kelly, Robert Gereg, BWC Capital and Barsanti Millwork in the amount of damages caused by their deprivation of the Debtor's corporate opportunities, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages;

(b)    Imposing a constructive trust upon all assets of BWC Capital, LLC and Barsanti Millwork, LLC in favor of the Debtor's bankruptcy estate; and

(c)    Granting such other and further relief as this Court deems just under the circumstances.

## COUNT XII – LEGAL MALPRACTICE
*Against Freeborn & Peters, LLP and Edward L. Filer*
**(Pled in the alternative to Counts XIII & XIV)**

287.    The Trustee hereby incorporates and re-alleges paragraphs 1 through 286 of this Complaint as paragraph 287 of this Count XII.

288.    At all times between February 13, 2013 and the Petition Date, there existed an attorney-client relationship among Freeborn, Filer and the Debtor.

46

289.   The existence of this attorney-client relationship established a duty on the parts of Freeborn and Filer to provide competent legal services to the Debtor and to exercise reasonable care, skill and diligence on behalf of the Debtor while providing such legal services.

290.   The existence of this attorney-client relationship also established a duty of loyalty on the parts of Freeborn and Filer to the Debtor and a duty not to take any actions adverse to the Debtor.

291.   Freeborn and Filer engaged in a series of negligent acts and/or omissions that constitute a breach of the duties of care and loyalty owed by Freeborn and Filer to its client, the Debtor, by:

a)   Regularly rendering legal services to and on behalf of Gereg, BWC Capital and/or Barsanti Millwork on matters regarding acquisition of the Debtor's assets;

b)   Billing the Debtor for legal services rendered by Freeborn for the benefit of Gereg, CRA, BWC Capital and/or Barsanti Millwork;

c)   Advancing and then billing the Debtor for costs advanced by Freeborn on behalf of BWC Capital and Barsanti Millwork, including, but not limited to costs associated with organizing BWC Capital in Indiana, organizing Barsanti Millwork in Indiana, perfecting BWC Capital's security interests in the Debtor's assets and prosecuting the BWC Confession Action against the Debtor;

d)   Drafting documents for BWC Capital to be organized under the laws of the State of Indiana on the day before the Assignment of Loan Documents was executed by BWC Capital;

e)   Drafting the BWC Capital Membership Assignment and holding the BWC Capital Membership Assignment in trust for the benefit of Gereg, Kelly and the Trust to create the appearance that Gereg (rather than Kelly) was the owner of BWC Capital;

f)   Drafting the Loan Assignment for the benefit of BWC Capital;

g)   Preparing and submitting the necessary documentation for BWC Capital to have a federal tax identification number issued;

47

h)  Drafting the Change in Terms Agreements which purported to create Confession of Judgment clauses in favor of BWC Capital and against the Debtor for the $1.6 million Note and the $155,625.00 Note;

i)  Advising Kelly, in his capacity as president and sole shareholder of the Debtor to execute the Change in Terms Agreements on May 29, 2013 and backdate the Change in Terms Agreements to April 5, 2013 to create the appearance that the Debtor received consideration in exchange for the addition of Confession of Judgment clauses to the $1.6 million Note and the $155,625.00 Note;

j)  Accepting possession of the Harris Bank loan documents on behalf of BWC Capital by executing the Acknowledgement of Receipt of Original Loan Documents dated May 2, 2013 in Freeborn's capacity "as agent for assignee BWC Capital, LLC";

k)  Drafting and filing the BWC Capital UCC Financing Statement which purported to perfect BWC Capital's interest in "All assets" of the Debtor on May 21, 2013 on behalf of BWC Capital;

l)  Drafting the documents for Barsanti Millwork to be organized under the Laws of the State of Indiana;

m)  Preparing and submitting the necessary documentation for Barsanti Millwork to have a federal tax identification number issued;

n)  Drafting the Barsanti Millwork Membership Assignment and holding the Barsanti Millwork Membership Assignment in trust for the benefit of Gereg, Kelly and the Trust to create the appearance that Gereg (rather than Kelly) was the owner of Barsanti Millwork;

o)  Paying the filing fee for BWC Capital to file the BWC Confession Action in the Circuit Court of Cook County;

p)  Allowing Judgment to be entered in the BWC Confession Action in favor of BWC Capital and against the Debtor without consideration of whether the Debtor possessed any defenses to the BWC Confession Action, including, but not limited to defenses relating to the enforceability of the Change in Terms Agreements and the confession of judgment clauses included therein; and

q)  Drafting the following documents on behalf of BWC Capital which were filed in the BWC Confession Action:

i.    BWC Capital's Complaint and Confession of Judgment;

ii.    BWC Capital's Affidavit of Robert Gereg in support of the Complaint and Confession of Judgment;

iii.    The Judgment Order in favor of BWC Capital;

iv.    The cover page for BWC Capital to record its certified copy of the Judgment Order;

v.    BWC Capital's Citation to Discover Assets served upon the Debtor following the entry of Judgment;

vi.    BWC Capital's Motion for Assignment and Conveyance of Title Pursuant to 735 ILCS 5/2-1402(c)(5); and

vii.    The Order granting BWC Capital's Motion for Assignment and Conveyance of Title Pursuant to 735 ILCS 5/2-1402(c)(5).

292.    At all times when Freeborn and Filer engaged in the above negligent acts and/or omissions, Freeborn and Filer were representing the Debtor. All of such negligent acts and/or omissions by Freeborn and Filer were adverse to the Debtor, its creditors and the Debtor's bankruptcy estate.

293.    As a proximate cause of the negligent acts and/or omissions and breaches of the duties of care and loyalty to the Debtor by Freeborn and Filer identified above, the Debtor's business operations ceased and the Debtor was stripped of its assets that should have been used to pay its creditors.

294.    As a proximate cause of the negligent acts and/or omissions and breaches of the duties of care and loyalty to the Debtor by Freeborn and Filer identified above, the Trustee and the Debtor's bankruptcy estate have incurred (and continue to incur) legal fees and costs investigating and seeking recovery for the negligent acts and/or omissions of Freeborn and Filer.

295. Freeborn is liable for the actions its partners (including Filer), members, associates and employees.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

(a) Enter judgment in favor of the Trustee and against Freeborn & Peters, LLP, jointly and severally, in the amount of damages caused by their legal malpractice and breaches of the duties of care and loyalty to the Debtor, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages; and

(b) Grant such other and further relief as this Court deems just under the circumstances.

## COUNT XIII – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### Against Freeborn & Peters, LLP
### (Pled in the alternative to Count XII)

296. The Trustee hereby incorporates and re-alleges paragraphs 1 through 295 of this Complaint as paragraph 296 of this Count XIII.

297. At all times from February 13, 2013 through the Petition Date, there existed an attorney-client relationship between Freeborn and the Debtor.

298. As the Debtor's consultant, Gereg and CRA were required to act on the Debtor's behalf with respect to all matters, including, but not limited to negotiating with Harris regarding the Loan.

299. During the time period from February 13, 2013 through the Petition Date, Freeborn engaged in the following conduct for the benefit of Gereg, BWC Capital and/or Barsanti Millwork to the detriment of the Debtor and its creditors, which facilitated Gereg's breaches of his fiduciary duties owed the Debtor:

50

a)   Regularly rendering legal services to Gereg, BWC Capital and/or Barsanti Millwork on matters regarding acquisition of the Debtor's assets;

b)   Billing the Debtor for legal services rendered by Freeborn for the benefit of Gereg, CRA, BWC Capital and/or Barsanti Millwork;

c)   Billing the Debtor for costs advanced by Freeborn, including, but not limited to costs associated with organizing BWC Capital in Indiana, orgianizing Barsanti Millwork in Indiana, perfecting BWC Capital's security interests in the Debtor's assets;

d)   Drafting and filing documents for BWC Capital to be organized under the laws of the State of Indiana on the day before the Assignment of Loan Documents was executed by BWC Capital;

e)   Drafting the BWC Capital Membership Assignment and holding the BWC Capital Membership Assignment in trust for the benefit of Gereg, Kelly and the Trust to create the appearance that Gereg (rather than Kelly) was the owner of BWC Capital;

f)   Drafting the Loan Assignment for the benefit of BWC Capital;

g)   Preparing the necessary documentation for BWC Capital to have a federal tax identification number issued;

h)   Drafting the Change in Terms Agreements which purported to create Confession of Judgment clauses in favor of BWC Capital for the $1.6 million Note and the $155,625.00 Note;

i)   Advising Kelly, in his capacity as president and sole shareholder of the Debtor to execute the Change in Terms Agreements on May 29, 2013 and backdate the Change in Terms Agreements to April 5, 2013 to create the appearance that the Debtor received consideration in exchange for the addition of Confession of Judgment clauses to the $1.6 million Note and the $155,625.00 Note;

j)   Accepting possession of the Harris Bank loan documents on behalf of BWC Capital by executing the Acknowledgement of Receipt of Original Loan Documents dated May 2, 2013 in Freeborn's capacity "as agent for assignee BWC Capital, LLC";

k)   Drafting and filing the BWC Capital UCC Financing Statement which purported to perfect BWC Capital's interest in "All assets" of the Debtor on May 21, 2013 on behalf of BWC Capital;

l)   Drafting and filing the documents for Barsanti Millwork to be organized under the Laws of the State of Indiana;

m)   Preparing the necessary documentation for Barsanti Millwork to have a federal tax identification number issued;

n)   Drafting the Barsanti Millwork Membership Assignment and holding the Barsanti Millwork Membership Assignment in trust for the benefit of Gereg, Kelly and the Trust to create the appearance that Gereg (rather than Kelly) was the owner of Barsanti Millwork;

o)   Prosecuting the BWC Confession Action against the Debtor on behalf of BWC Capital;

p)   Paying the filing fee for BWC Capital to file the BWC Confession Action in the Circuit Court of Cook County;

q)   Allowing Judgment to be entered in the BWC Confession Action in favor of BWC Capital and against the Debtor without consideration of whether the Debtor possessed any defenses to the BWC Confession Action, including, but not limited to defenses relating to the enforceability of the Change in Terms Agreements and the confession of judgment clauses included therein; and

r)   Drafting the following documents on behalf of BWC Capital which were filed in the BWC Confession Action:

  i.   BWC Capital's Complaint and Confession of Judgment;

  ii.   BWC Capital's Affidavit of Robert Gereg in support of the Complaint and Confession of Judgment;

  iii.   The Judgment Order in favor of BWC Capital;

  iv.   The cover page for BWC Capital to record its certified copy of the Judgment Order;

  v.   BWC Capital's Citation to Discover Assets served upon the Debtor following the entry of Judgment;

  vi.   BWC Capital's Motion for Assignment and Conveyance of Title Pursuant to 735 ILCS 5/2-1402(c)(5); and

  vii.   The Order granting BWC Capital's Motion for Assignment and Conveyance of Title Pursuant to 735 ILCS 5/2-1402(c)(5).

300.   Gereg's acts in obtaining the assets of the Debtor were wrongful and proximately resulted in damages to the Debtor.

301.   Freeborn was regularly aware that it was assisting Gereg in a scheme to allow entities owned by Gereg to obtain the assets of the Debtor at all times that Freeborn was providing assistance to Gereg.

302.   Freeborn knowingly and substantially assisted Gereg in his breaches of his fiduciary duties to the Debtor.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

      (a)    Enter judgment in favor of the Trustee and against Freeborn & Peters, LLP in the amount of damages caused by its aiding and abetting the breach of fiduciary duty of Robert Gereg, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages; and

      (b)    Grant such other and further relief as this Court deems just under the circumstances.

## COUNT XIV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### *Against Freeborn & Peters, LLP*
### (Pled in the alternative to Count XII)

303.   The Trustee hereby incorporates and re-alleges paragraphs 1 through 302 of this Complaint as paragraph 303 of this Count XIV.

304.   At all times from February 13, 2013 through the Petition Date there existed an attorney-client relationship between the Debtor and Freeborn.

305.   Kelly, as the president and sole shareholder of the Debtor owed a fiduciary duty of loyalty and good faith to the Debtor and, due to the Debtor's insolvency, its creditors.

306.   During the time period from February 13, 2013 through the Petition Date, Freeborn assisted Kelly and Gereg in the creation and implementation of a scheme for the benefit of Kelly, Gereg, BWC Capital and Barsanti Millwork, which facilitated Kelly's breaches of his fiduciary duties owed the Debtor and the Debtor's creditors.

307.   Freeborn advised Kelly on strategies and legal processes that needed to be employed in order to effectively put the Debtor out of business so that: (1) the Debtor's custom woodwork and millwork fabrication would continue on under the name Barsanti Millwork free and clear of the claims of the Debtor's creditors; (2) Kelly could claim the right to own a 100% interest in BWC Capital (which owns substantially all of the tangible assets of the Debtor) by virtue of the BWC Capital Membership Assignment; (3) Kelly could claim the right to own a 100% interest in the operating entity Barsanti Millwork by virtue of the Barsanti Millwork Membership Assignment; (4) Kelly would participate in the day-to-day affairs of Barsanti Millwork and be compensated by Barsanti Millwork; and (5) Kelly's personal liability for the Debtor's activities would be limited or completely expunged.

308.   Kelly's acts were wrongful and proximately caused damages to the Debtor.

309.   Freeborn was regularly aware that it was assisting Kelly in a scheme to transfer the assets of the Debtor to a new entity to the detriment of the Debtor's creditors and for the benefit of Kelly.

310.   Freeborn knowingly and substantially assisted Kelly in his breaches of his fiduciary duties to the Debtor and the Debtor's creditors.

311.   Freeborn actively and directly participated in Kelly's breaches of his fiduciary duties to the Debtor and the Debtor's creditors.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

    (a)    Enter judgment in favor of the Trustee and against Freeborn & Peters, LLP in the amount of damages caused by its aiding and abetting the breach of fiduciary duty of Paul Kelly, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages; and

    (b)    Grant such other and further relief as this Court deems just under the circumstances.

### COUNT XV – CIVIL CONSPIRACY TO COMMIT ACTUAL FRAUD
*Against Paul Kelly, Robert Gereg, Freeborn & Peters, BWC Capital, LLC,
Barsanti Millwork, LLC, Edward L. Filer and The K Family Trust*

312.    The Trustee hereby incorporates and re-alleges paragraphs 1 through 311 of this Complaint as paragraph 312 of this Count XV.

313.    Kelly, Gereg, BWC Capital, Barsanti Millwork, Freeborn, Filer and the Trust entered into an agreement to accomplish an unlawful act – the fraudulent transfer by the Debtor of its assets to BWC Capital to the detriment of the Debtor and its creditors.

314.    Kelly, Gereg, BWC Capital, Barsanti Millwork, Freeborn, Filer and the Trust knew of the purpose of the scheme, and accomplished the scheme through a series of overt acts including, but not limited to:

    (a)    Organizing BWC Capital so that BWC Capital could become the Debtor's secured lender;

    (b)    Inserting Gereg as the sole member of BWC Capital to create the appearance that BWC Capital was an entity separate from the Debtor;

    (c)    Negotiating and drafting the Loan Assignment with Harris for the benefit of BWC Capital rather than the Debtor;

    (d)    Paying the Purchase Price for the Loan Assignment entirely out of collection of the Debtor's accounts receivable;

(e)     Drafting and executing the BWC Capital Membership Assignment so that Kelly, through the Trust, could acquire a 100% ownership interest in BWC Capital;

(f)     Drafting and executing the Change in Terms Agreements so that BWC Capital could expeditiously foreclose upon the assets of the Debtor through an expedited confession of judgment proceeding (the BWC Confession Action);

(g)     Backdating the Change in Terms Agreements to create the appearance that the Debtor received consideration (i.e. an extension of the maturity date for the $1.6 million Note and the $155,625.00 Note) in exchange for the creation of a confession of judgment clause in favor of BWC Capital;

(h)     Organizing Barsanti Millwork so that Barsanti Millwork could become a new operating entity in the same business as the Debtor;

(i)     Inserting Gereg as the sole member of Barsanti Millwork to create the appearance that Barsanti Millwork was an entity separate from the Debtor;

(j)     Drafting and executing the Barsanti Millwork Membership Assignment so that Kelly, through the Trust, could acquire a 100% ownership interest in Barsanti Millwork;

(k)     Negotiating contracts, including, but not limited to the Turner Construction "U of C Project" contract in the name of Barsanti Millwork when the Debtor was still operating and when Barsanti Millwork did not have the requisite employees or equipment to perform on such contracts;

(l)     Engaging counsel on behalf of BWC Capital for the filing and prosecution of the BWC Confession Action to create the appearance that Freeborn and Filer were not representing BWC Capital;

(m)     Drafting and filing documents in the BWC Confession Action for the benefit of BWC Capital including, but not limited to the Complaint and Confession of Judgment, the Motion for Assignment and Conveyance of Title and the Citation;

(n)     Drafting and executing the Assignment and Conveyance;

(o)     Drafting and executing an Equipment Lease whereby Barsanti Millwork would lease substantially all of the Debtor's assets from BWC Capital to conceal that BWC Capital is the conduit of the business of Barsanti Millwork;

315.    The overt acts performed by Kelly, Gereg, BWC Capital, Barsanti Millwork, Freeborn, Filer and the Trust were performed in furtherance of the common scheme to deprive the Debtor of its assets and its ability to pay its creditors.

316.    As a result of the overt acts performed by Kelly, Gereg, BWC Capital, Barsanti Millwork, Freeborn, Filer, and the Trust the Debtor and its creditors have been injured, because the Debtor was left without assets to pay all or any portion of its debts.

317.    In an effort to evade the creditors of the Debtor and the Trustee, Kelly, Gereg, BWC Capital, Barsanti Millwork, Freeborn, Filer and the Trust continue to effect the scheme to this day.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

(a)    Enter judgment in favor of the Trustee and against Paul Kelly, Robert Gereg, BWC Capital, LLC, Barsanti Millwork, LLC, Freeborn & Peters, LLP, Edward L. Filer and The K Family Trust in the amount of damages caused by their civil conspiracy, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages;

(b)    Grant such other and further relief as this Court deems just under the circumstances.

## COUNT XVI– AIDING AND ABETTING ACTUAL FRAUDULENT TRANSFERS
### *Against Paul Kelly, Robert Gereg, Freeborn & Peters, BWC Capital, LLC, Barsanti Millwork, LLC, Edward L. Filer and The K Family Trust*

318.    The Trustee hereby incorporates and re-alleges paragraphs 1 through 317 of this Complaint as paragraph 318 of this Count XVI.

319.    Kelly, Gereg, Freeborn, BWC Capital, Barsanti Millwork, Filer and the Trust knowingly induced, participated, and assisted the Debtor in actively and deliberately defrauding

its creditors by and through the transfer of the Debtor's assets to BWC Capital and Barsanti Millwork.

320.    As a result of each of Kelly, Gereg, Freeborn, BWC Capital, Barsanti Millwork, Filer, and the Trust aiding and abetting the Debtor's improper transfers, the Debtor has creditors that remain unpaid, even though there were sufficient assets owned by the Debtor to satisfy all or part of the Debtor's liabilities to its creditors.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

(a)    Enter judgment in favor of the Trustee and against Paul Kelly, Robert Gereg, BWC Capital, LLC, Barsanti Millwork, LLC, Freeborn & Peters, LLP, Edward L. Filer and the Trust in the amount of damages caused by their aiding and abetting the Debtor's fraudulent transfers described herein, which amount shall be proven at trial, plus costs, attorneys' fees, interest and punitive damages;

(b)    Grant such other and further relief as this Court deems just under the circumstances.

### COUNT XVII – ALTER EGO/PIERCING CORPORATE VEIL
*Against Paul Kelly*

321.    The Trustee hereby incorporates and re-alleges paragraphs 1 through 320 of this Complaint as paragraph 321 of this Count XVII.

322.    At all times relevant hereto, Kelly controlled and dominated the Debtor, which resulted in reckless self-dealing transactions whereby Kelly, Gereg, BWC Capital and Barsanti Millwork extracted value from the Debtor at the cost of the Debtor's non-insider creditors.

323.    None of the officers of the Debtor acted independently in the interests of the Debtor, but were under the direction and control of Kelly.

324. At all relevant times, the Debtor was inadequately capitalized to operate its business.

325. Kelly's domination and control over the Debtor resulted in fraud and inequity to the Debtor's non-insider creditors.

326. Kelly's domination and control over the Debtor resulted in damages to the Debtor's non-insider creditors.

327. Kelly so dominated and controlled the Debtor that the Debtor was the mere instrumentality of Kelly, such that the corporate status of the Debtor should be disregarded and Kelly should be held legally responsible for the Debtor's debts.

328. Respecting the corporate form of the Debtor and treating it as an entity separate from Kelly will promote injustice, inequity and fraud with respect to the non-insider creditors of the Debtor.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

      (a)    Determine that Kelly is the alter ego of the Debtor such that equity requires the piercing of the corporate veil;

      (b)    Determine that Kelly is liable for all debts of the Debtor;

      (c)    Enter judgment in favor of the Trustee and against Paul Kelly in the amount of the liabilities of the Debtor, which amount would be determined at trial, plus costs, interest, attorneys' fees and punitive damages; and

      (d)    Grant such other and further relief as this Court deems just under the circumstances.

## COUNT XVIII – SUCCESSOR LIABILITY
*Against BWC Capital and Barsanti Millwork, LLC*

329.    The Trustee hereby incorporates and re-alleges paragraphs 1 through 328 of this Complaint as paragraph 329 of this Count XVIII.

330.    Prior to the transfer of its assets to BWC Capital, the Debtor was engaged in the business of engineering, veneering, assembling and finishing of custom architectural woodwork and millwork.

331.    Immediately after the transfer of the Debtor's assets to BWC Capital, Barsanti Millwork continued to provide services previously provided by the Debtor – namely, engineering, veneering, assembly and finishing of custom architectural woodwork and millwork – with no interruption.

332.    The transition in operations was facilitated by BWC Capital's execution of a Lease with Barsanti Millwork which purportedly provides Barsanti Millwork the right to use substantially all of the assets that previously belonged to the Debtor.

333.    Under the terms of the Lease, Barsanti Millwork is purportedly required to make monthly rental payments to BWC Capital in the amount of $5,000.00.

334.    Barsanti Millwork has never paid BWC Capital a rental payment, thereby making BWC Capital a conduit of the business of Barsanti Millwork.

335.    Barsanti Millwork operates from 3838 W. 51st St., Chicago, Illinois, the business premises used by the Debtor.

336.    Barsanti Millwork maintains common employees with the Debtor, including carpenters, office clerical staff and Kelly.

337.    Barsanti Millwork uses substantially the same assets as the Debtor to conduct its business, including, but not limited to: beam saws, edge banders, sliding table saws, cabinet saws, belt sanders, shapers, joiners, chop saws, radial arm saws, double miter saws, sanders, Kreg pocket hole machines, spray tanks, spray booths, compressors, dust collection system(s), vacuum lifts(s), and various hand tools, gang boxes, drills, routers, and portable saws.

338.    Barsanti Millwork has customers in common with the Debtor, including, but not limited to University of Chicago and Turner Construction.

339.    Kelly, in his capacity as president and sole shareholder of the Debtor, acted in concert with Robert Gereg, BWC Capital, Barsanti Millwork and Freeborn to implement a scheme whereby, among other things, Kelly caused the Debtor to stop doing business while he continued to be employed as a business development/sales representative of Barsanti Millwork and draw a salary from Barsanti Millwork of approximately $125,000.00 annually.

340.    By virtue of the BWC Capital Membership Assignment and the Barsanti Millwork Membership Assignment, Kelly may assert that he currently owns or has the right to own BWC Capital, Barsanti Millwor and all of the tangible and intangible assets of the Debtor free and clear of the claims of the Debtor's creditors.

341.    Barsanti Millwork and BWC Capital are the continuation of the business of the Debtor.

342.    Allowing Barsanti Millwork and BWC Capital to be treated as entities separate from the Debtor will promote injustice, inequity and fraud with respect to the Debtor's non-insider creditors.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

(a)   Determine that Barsanti Millwork and BWC Capital are the mere continuation of the Debtor such that their separate corporate identities should be disregarded;

(b)   Determine that Barsanti Millwork and BWC Capital are liable for all debts of the Debtor;

(c)   Impose a constructive trust over all of the assets of Barsanti Millwork and BWC Capital in favor of the Debtor's bankruptcy estate and ordering that those assets be turned over to the Trustee;

(d)   Enter judgment in favor of the Trustee and against Barsanti Millwork and BWC Capital in the amount of the liabilities of the Debtor, which amount would be determined at trial, plus costs, interest, attorneys' fees and punitive damages; and

(e)   Grant such other and further relief as this Court deems just under the circumstances.

## COUNT XIX – INJUNCTION
### Against BWC Capital, LLC

343.   The Trustee hereby incorporates and re-alleges paragraphs 1 through 342 of this Complaint as paragraph 343 of this Count XIX.

344.   By virtue of the Assignment and Conveyance, BWC Capital may claim ownership to substantially all of the tangible assets that previously belonged to the Debtor.

345.   The Trustee is likely to succeed on the merits of his claims alleged herein against BWC Capital.

346.   In the event that the assets of BWC Capital are transferred outside of the ordinary course of the business of BWC Capital, no adequate remedy at law will exist for the Trustee.

62

347. The Trustee will suffer irreparable harm if preliminary and permanent injunctive relief is not granted to prevent BWC Capital from transferring its assets outside of the ordinary course of BWC Capital's business.

348. Any harm to BWC Capital resulting from the entry of injunctive relief is minimal compared to the harm that the Trustee will suffer if injunctive relief is not granted.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

     (a)    Enter preliminary and permanent injunctive relief prohibiting BWC Capital from transferring any of the assets of BWC Capital outside of the ordinary course of BWC Capital's business;

     (b)    Grant such other and further relief as this Court deems just under the circumstances.

### COUNT XX – INJUNCTION
*Against Barsanti Millwork, LLC*

349. The Trustee hereby incorporates and re-alleges paragraphs 1 through 348 of this Complaint as paragraph 349 of this Count XX.

350. Barsanti Millwork is operating as a company that provides services relating to the fabrication of customized woodwork and/or millwork and: (1) utilizes the same business premises that the Debtor previously used; (2) employs several employees who were previously employed by the Debtor; and (3) uses substantially the same equipment that the Debtor previously used pursuant to an equipment lease with BWC Capital under which Barsanti Millwork has never made a lease payment to BWC Capital.

351.   In addition to using the same tangible assets that the Debtor once used at no cost, Barsanti Millwork also utilizes valuable intangible assets of the Debtor, including but not limited to the Debtor's goodwill, for the benefit of Barsanti Millwork.

352.   The Trustee is likely to succeed on the merits of his claims alleged herein against Barsanti Millwork.

353.   In the event that the assets of Barsanti Millwork are transferred outside of the ordinary course of the business of Barsanti Millwork, no adequate remedy at law will exist for the Trustee.

354.   The Trustee will suffer irreparable harm if preliminary and permanent injunctive relief is not granted to prevent Barsanti Millwork from transferring its assets outside of the ordinary course of Barsanti Millwork's business.

355.   Any harm to Barsanti Millwork resulting from the entry of injunctive relief is minimal compared to the harm that the Trustee will suffer if injunctive relief is not granted.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court:

(a)   Enter preliminary and permanent injunctive relief prohibiting Barsanti Millwork from transferring any of the assets of Barsanti Millwork outside of the ordinary course of Barsanti Millwork's business;

(b)   Grant such other and further relief as this Court deems just under the circumstances.

64

## COUNT XXI – EQUITABLE SUBORDINATION
*Against BWC Capital, LLC, Barsanti Millwork, LLC, Robert Gereg,*
*Paul Kelly, and Freeborn & Peters, LLP*

356.    The Trustee hereby incorporates and re-alleges paragraphs 1 through 355 of this

Complaint as paragraph 356 of this Count XXI.

357.    Section 510 of the Bankruptcy Code provides, in relevant part, as follows:

> (c) Notwithstanding subsections (a) and (b) of this section, after
> notice and a hearing, the court may –
>
> > (1) under principles of equitable subordination,
> > subordinate for purposes of distribution all or part of an
> > allowed claim to all or part of another allowed claim or
> > all or part of an allowed interest to all or part of another
> > allowed interest; or
> >
> > (2) Order that any lien securing such a subordinated claim
> > be transferred to the estate.

11. U.S.C. § 510(c).

358.    Based upon the facts alleged in this Complaint, the claims, if any, of BWC

Capital, Barsanti Millwork, Gereg, Kelly and/or Freeborn should be equitably subordinated in-

full to all other claims against the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 510(c)(1).

359.    Based upon the facts alleged in this Complaint any lien securing a claim of BWC

Capital, Barsanti Millwork, Gereg, Kelly and/or Freeborn should be transferred to the Debtor's

bankruptcy estate pursuant to 11 U.S.C. § 510(c)(2).

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as

Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully

requests that this Court:

> (a)    Equitably subordinate the claims, if any, of BWC Capital, Barsanti
> Millwork, Robert Gereg, Paul Kelly and Freeborn in full to all other
> claims;

    (b)    Transfer to the bankruptcy estate any lien securing such subordinated claims; and

    (c)    Grant such other and further relief as this Court deems just under the circumstances.

**COUNT XXII – AVOIDANCE OF LIENS**
*Against BWC Capital, LLC*

360.    The Trustee hereby incorporates and re-alleges paragraphs 1 through 359 of this Complaint as paragraph 360 of this Count XXII.

361.    On May 21, 2013, BWC Capital filed the BWC Capital UCC, wherein BWC Capital purportedly perfected its interest in "All Assets" of the Debtor.

362.    On July 11, 2013, BWC Capital filed a Citation to Discover Assets against the Debtor in the BWC Confession Action.

363.    For the reasons set forth above, no debt is or ever was due and/or owing by the Debtor to BWC Capital.

364.    BWC Capital does not hold any claim against the Debtor's estate.

365.    BWC Capital was not a creditor of the Debtor at the time that the BWC Capital UCC was filed with the Illinois Secretary of State.

366.    BWC Capital was not a creditor of the Debtor at the time that the Citation to Discover Assets was filed in the BWC Confession Action.

367.    Any lien(s) against assets of the Debtor purportedly created by the filing of the BWC Capital UCC and the filing and/or service of the Citation to Discover Assets in the BWC Confession Action secure no debt or claim of BWC Capital.

66

368.   Any and all liens created by the filing of the BWC Capital UCC and the filing and/or service of the Citation to Discover Assets in the BWC Confession Action are avoidable pursuant to Section 506(d) of the Bankruptcy Code.

WHEREFORE, EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION respectfully requests that this Court enter an Order:

    (a)    Avoiding any and all liens created in favor of BWC Capital by the filing of the BWC Capital UCC pursuant to section 506(d) of the Bankruptcy Code;

    (b)    Avoiding any and all liens created in favor of BWC Capital by the filing and/or service of the Citation to Discover Assets in the BWC Confession Action pursuant to section 506(d) of the Bankruptcy Code;

    (c)    Granting such other and further relief as this Court deems just under the circumstances.

Respectfully Submitted,

EUGENE CRANE, not individually, but solely in his capacity as Chapter 7 Trustee for the estate of BARSANTI WOODWORK CORPORATION, Debtor,

/s/ Eugene Crane
One of His Attorneys

**TRUSTEE'S COUNSEL**
Eugene Crane (#0537039)
David K. Welch (#06183621)
Arthur G. Simon (#03124481)
Jeffrey C. Dan (#06242750)
Brian P. Welch (#06307292)
CRANE, HEYMAN, SIMON, WELCH & CLAR
135 S. LaSalle St., Ste. 3705
Chicago, Illinois 60603
Tel: 312.641.6777
Fax: 312.641.7114