IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 13-33965 |
| BARSANTI WOODWORK ) | Chapter 7 |
| CORPORATION, ) | Hon. Pamela S. Hollis |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| EUGENE CRANE, not individually, but solely ) | |
| in his capacity as Chapter 7 Trustee for the Estate) | |
| of BARSANTI WOODWORK CORPORATION,) | |
| Debtor, ) | Adv. No. 15-00614 |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| PAUL KELLY, individually and as Trustee of ) | |
| THE K FAMILY TRUST, ROBERT GEREG, ) | |
| individually, and d/b/a CAPITAL RESOURCE ) | |
| ASSOCIATES and FORCE 5 HOLDINGS, ) | |
| INC., an administratively dissolved Florida ) | |
| corporation, BWC CAPITAL, LLC, an ) | |
| Indiana limited liability company, BARSANTI ) | |
| MILLWORK, LLC, an Indiana limited liability ) | |
| company, FREEBORN & PETERS, LLP, an ) | |
| Illinois limited liability partnership, EDWARD ) | |
| L. FILER, and THE K FAMILY TRUST, ) | |
| ) | |
| *Defendants*. ) | |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on November 10, 2015, at 10:00 a.m., or as soon thereafter as counsel may be heard before Honorable Judge Pamela S. Hollis in Courtroom 644, in the United States Bankruptcy Court for the Northern District of Illinois, 219 South Dearborn, Chicago, Illinois, and then and therewith present **ROBERT GEREG, BWC CAPITAL, LLC, AND BARSANTI MILLWORK, LLC'S MOTION TO DISMISS THE TRUSTEE'S ADVERSARY COMPLAINT**, a copy of which is attached hereto.

Respectfully submitted,
s/Vivek Jayaram

1

Vivek Jayaram
Jayaram Law Group, Ltd.
33 North LaSalle Street
29th Floor
Chicago, IL 60602
(312) 454-2859

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>BARSANTI WOODWORK )<br>CORPORATION, )<br>)<br>Debtor. )<br>_____ )<br>)<br>EUGENE CRANE, not individually, but solely )<br>in his capacity as Chapter 7 Trustee for the Estate)<br>of BARSANTI WOODWORK CORPORATION,)<br>Debtor, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>PAUL KELLY, individually and as Trustee of )<br>THE K FAMILY TRUST, ROBERT GEREG, )<br>individually, and d/b/a CAPITAL RESOURCE )<br>ASSOCIATES and FORCE 5 HOLDINGS, )<br>INC., an administratively dissolved Florida )<br>corporation, BWC CAPITAL, LLC, an )<br>Indiana limited liability company, BARSANTI )<br>MILLWORK, LLC, an Indiana limited liability )<br>company, FREEBORN & PETERS, LLP, an )<br>Illinois limited liability partnership, EDWARD )<br>L. FILER, and THE K FAMILY TRUST, )<br>)<br>*Defendants*. ) | Case No. 13-33965<br>Chapter 7<br>Hon. Pamela S. Hollis<br><br><br><br><br><br><br><br>Adv. No. 15-00614 |

**ROBERT GEREG, BWC CAPITAL, LLC, AND BARSANTI MILLWORK, LLC'S MOTION TO DISMISS THE TRUSTEE'S ADVERSARY COMPLAINT**

Pursuant to Bankruptcy Rule 7012(b)(6) and Federal Rule of Civil Procedure 12(b)(6), Robert Gereg, BWC Capital, LLC ("BWC"), and Barsanti Millwork, LLC ("Barsanti") move for entry of an order dismissing Counts I, II, III, IV, V, VI, X, XI, XV,

3

XVI, IX, X, XXI, and XXII of Eugene Crane's (the "Trustee") Adversary Complaint, and in support states as follows[1]:

### I. Introduction

The Trustee has brought a twenty-two-Count Complaint containing a staggering 368 paragraphs against a litany of defendants. The Trustee makes broad and sweeping allegations that Mr. Gereg, BWC, Barsanti, and Paul Kelly (along with their attorneys at Freeborn and Peters) somehow engaged in an elaborate scheme to "defraud" creditors.

This kitchen sink approach, however, is patently insufficient as a matter of law and ultimately exposes the weakness of the Trustee's claims against these defendants. Indeed, the Complaint is poorly pled and fails to state a cause of action against Mr. Gereg, BWC, or Barsanti.[2] Specifically, (1) Counts I-VI should be dismissed because the assets at issue are subject to a valid security interest; (2) Counts I-VI Are Barred By Res Judicata; (3) Counts X-XI should be dismissed because the Complaint fails to allege facts establishing any of the elements of breach of fiduciary duty in Illinois; (4) Counts XV-XVI should be dismissed because there can be no conspiracy to commit fraud where there are no allegations of fraudulent conduct; (5) Count XVI should be dismissed because there can be no aiding and abetting a fraudulent transfer where there is no fraudulent transfer; and (6) Counts XIX and XX should be dismissed because an injunction is a remedy and not a cause of action; (7) Counts XXI and XXII should be dismissed because the Complaint's facts fail to sufficiently demonstrate that Mr. Gereg, BWC, or Barsanti engaged in fraud.

---

[1] Mr. Crane has brought this Adversary Complaint solely in his capacity as Trustee for the Estate of Barsanti Woodwork, LLC (the "Debtor").

[2] Barsanti has not moved to dismiss Count XVIII for Successor Liability. Rather, in an effort to promote efficient litigation practices Barsanti has separately sought an extension of time to answer that claim pending the Court's ruling on this motion.

4

## II. Legal Standard

Rule 12(b)(6) and its bankruptcy analogue Rule 7012, permit a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *See, e.g., In re Lopresti*, 397 B.R. 62 (N.D. Ill. 2008). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits. In determining the propriety of dismissal, a court must accept the allegations of the complaint as true, and draw all reasonable inferences in a light most favorable to the plaintiff. *Brown v. Budz*, 398 F.3d 904, 907-08 (7th Cir. 2005). A complaint is not required to contain detailed factual allegations, but it is not enough merely that there might be some conceivable set of facts that entitles the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Critically, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This task "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011)); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

### III. Argument

**A. Counts I-VI Should be Dismissed Because the Assets at Issue Are Subject to a Valid Security Interest.**

The Debtor entered into a loan agreement (the "Loan") with Harris Bank (the "Bank") in 2007. *See* Compl. at ¶17. *See* Exhibit A. The loan was secured pursuant to a Commercial Security Agreement. *Id.* at ¶26. *See* Exhibit B. The Bank held a perfected first priority security interest in "all property, assets, rights, and interests of the Debtor." *Id.* at ¶¶26-27. The Debtor defaulted on the Loan and the Bank filed lawsuits against the Debtor for breach of contract and replevin. *Id.* at ¶¶28-31. The Debtor retained Mr. Gereg as a consultant to advise them on a workout strategy. *Id.* at ¶¶34-35. Upon his retention, Mr. Gereg began negotiating a potential resolution of the Loan and lawsuits with the Bank. *Id.* at ¶39. On April 4, 2013, Mr. Gereg formed BWC. *Id.* at ¶¶42-43. On April 5, 2013, the Bank assigned all right, title, and interest in the Loan to BWC in exchange for $575,000. *Id.* at ¶¶58-60. *See* Exhibit C. On May 6, 2013, the Bank dismissed both lawsuits after all the formalities related to the assignment to BWC were properly effectuated. *Id.* at ¶¶71-75.

Despite alleging these facts, the Trustee contends that Mr. Gereg, BWC, and Barsanti are all responsible for fraudulently transferring the Debtor's assets to BWC. Unfortunately for the Trustee, the Debtor's assets cannot be avoided as a fraudulent transfer claim under the Uniform Fraudulent Transfer Act ("UFTA") because at the time of the transfer, the Debtor's assets were fully encumbered by the Bank's all-asset lien.

*Rafool v. Propack Sys., LLC (In re Fleming Packaging Corp.)*, 2007 Bankr. LEXIS 1047 (N.D. Ill. 2007) and *Richardson v. Huntington Nat'l Bank (In re CyberCo Holdings, Inc.)*, 382 B.R. 118 (W.D. Mich. 2014), are instructive. In *Rafool*, a trustee sought to avoid a third party's purchase of a certain debtor's assets as fraudulent under the Uniform

6

Fraudulent Transfer Act ("UFTA"). It was undisputed that the assets were encumbered by a valid Bank One lien at the time the assets were transferred to the third party. The third party pointed out that the UFTA's definition of "asset" is "property of the debtor" but excludes "property to the extent it is encumbered by a valid lien." *See* 740 ILCS 160/2(b)(1). The bankruptcy court noted that the Official Comments to the Uniform Fraudulent Transfer Act explain that by excluding from the term "asset" an interest that is beyond reach by unsecured creditors because subject to a valid lien, it is the intent of the Act to provide remedies for unsecured creditors against transfers that impede them in the collection of their claims. *See Rafool* at *24. Because there was no dispute that Bank One had a valid lien on the assets at the time they were transferred to the third party, the trustee's claim for fraudulent transfer failed as a matter of law.

In *Huntington*, the trustee's amended complaint alleged hat transfers by the debtor to Huntington Bank were recoverable as fraudulent under Michigan's fraudulent conveyance laws. The trustee sought to recover all transfers by the debtor to Huntington Bank over the period of several years. The trustee contended that these transfers may have been as much as $ 23,657,098.33. In granting Huntington Bank's motion to dismiss pursuant to 7012(b)(6), the court held that the transfer of assets from a debtor to a secured party is not "property" under the fraudulent transfer statutes. *See Huntington*, 382 B.R. 118 at 142 ("[t]herefore, the UFTA incorporates the same concept as Section 548: a debtor can fraudulently transfer to another only that which the debtor actually owns. The UFTA just expresses the concept in a different way.").

Here, the Trustee's Complaint makes clear that ***all*** of the Bank's security interests in the debtor's property were assigned to BWC. *See* Compl. at ¶¶58-60. In other words, BWC acquired the Bank's secured position over the debtor's assets. In doing so, the Debtor extinguished its obligations to the Bank, and instead owed those same

7

obligations to BWC. Accordingly, the assets that form the basis for the Trustee's fraudulent transfer claims were never assets of the debtor to begin with – they belonged to the Bank and then to BWC pursuant to the liens and assignments that took place. Thus, there is no way that Mr. Gereg, BWC, or Barsanti could have been responsible for any fraudulent transfer because the assets are not "property" under applicable law.

### B. Counts I-VI Are Barred By Res Judicata.

The doctrine of "[r]es judicata bars not only those issues actually decided in the prior suit, but **all other issues which could have been brought**." *Aaron v. Mahl*, 550 F.3d 659, 664 (7th Cir. 2008). The principle underlying res judicata—or claim preclusion—is to minimize "the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). Res judicata has three elements: "(1) an identity of the parties or their privies; (2) [an] identity of the cause of action; and (3) a final judgment on the merits." *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008). Res Judicata should be applied to bar the instant fraudulent transfer claims because those claims could have been litigated in the 2013 supplementary proceedings between the Debtor and BWC.

### i.   *The Identity of the Parties*

The Trustee's Complaint makes clear that the Debtor and BWC were engaged in supplementary proceedings in 2013 in which all parties were represented by counsel. *See* Compl. at ¶¶29-33. The turnover action followed Illinois' procedure regarding supplementary proceedings. *See* Rule 69(a) F.R.Civ.P.; *see also Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993). In the supplementary proceeding, Judge White ***ordered*** the Debtor to turnover the assets in question to BWC. *See* Compl. at ¶122 (Exhibit M). If Debtor failed to turnover the assets to BWC it risked being held in

8

contempt of the Circuit Court. In any event, there is no question that the parties to the supplementary proceeding were the same as the parties to the Trustee's instant fraudulent transfer claims.

> ii. *The Identity of the Causes of Action*

The second element—whether an "identity of the cause of action" exists—depends on whether the claims arise out of the same set of operative facts or the same transaction. *In re Energy Coop., Inc.*, 814 F.2d 1226, 1230 (7th Cir. 1987). This "transactional" inquiry focuses on whether the claims comprise the same "core of operative facts [that] give rise to a remedy." *Id*. In the prior action, BWC brought a motion for turnover arising out of BWC's security interest in all of the Debtor's assets. At that time, the Debtor could have raised a defense that BWC's security interest was procured by fraud (or any other defense, based in fraud or otherwise). But it didn't. Rather, BWC obtained a turnover of all of the assets of the Debtor after Judge White heard arguments on the motion by counsel representing both parties.

Moreover, it is not unusual for a judge to entertain issues regarding fraudulent transfers in a supplementary proceeding. In *Resolution Trust Corp. v. Ruggiero,* 994 F.2d 1221 (7th Cir. 1993), for example, the debtor in a supplementary proceeding claimed that the real estate he formerly owned had been entirely transferred to his wife. After examining the value of the property, the timing of the transfer, the wife's lack of involvement with the property, the debtor's role in managing the property, and the wife's lack of income or professional abilities that could be exchanged for the property, the Seventh Circuit concluded, "The record… established that Angelo Ruggiero had placed title to his properties in his wife's name in order to insulate himself from his creditors." *Id*. at 1227.

9

Illinois precedents have also used supplementary proceedings to examine the allegedly fraudulent nature of certain transfers. In *Alan Drey Co., Inc. v. Generation, Inc.*, 22 Ill. App. 3d 611, 317 N.E.2d 673 (Ill.App. 1st Dist 1974), the court affirmed a creditor's judgment from a supplementary proceeding which found that a fraudulent transfer had occurred. The Illinois Appellate Court in *Alan* stated that "circumstances surrounding the transfer exemplify various indicia of fraud from which a finding of fraudulent intent may be inferred." 317 N.E.2d at 679. Moreover, the court also examined whether the transferee was a participant in the fraud rather than a bona fide purchaser. *Id*. at 680. In *Meggison v. Stevens*, 21 Ill. App. 3d 505, 316 N.E.2d 297 (Ill.App. 1st Dist. 1974), the trial court also used a supplementary proceeding to determine if a conveyance was a fraudulent transfer. After examining the circumstances of the conveyance, trial court held that the defendants had engaged in a fraudulent transfer with the intention of defrauding the plaintiff creditor. *See* 316 N.E.2d at 299. While the appellate court reversed on the basis that defendants should have been allowed to present additional evidence at the supplementary proceeding, the appellate court did not even question that the supplementary proceeding was an appropriate vehicle to examine whether the conveyance had been fraudulent.

Because the *Meggison*, *Alan*, and *Ruggiero* decisions clearly establish that the Debtor **could have** fully litigated its fraudulent transfer theories in the supplementary proceeding, there was identity of causes of action between the turnover action and the present case.

 ii. *Final Judgment on the Merits*

There can be no dispute that the Circuit Court in this case entered a final judgment of turnover as reflected by Exhibit A after reviewing BWC's motion and

hearing argument in open court. Thus, this Court should find that the Trustee's Complaint is barred by the doctrine of res judicata.

### C. Counts X-XI Should be Dismissed Because the Complaint Fails to Allege Facts Establishing Any Of The Elements of Breach of Fiduciary Duty Under Illinois Law.

In order to state a claim for breach of fiduciary duty under Illinois law, a plaintiff must allege that (1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) such breach proximately caused the injury of which the plaintiff complains. *See, e.g., Neade v. Portes*, 193 Ill. 2d 433, 444 (2000). When determining whether a fiduciary relationship exists, courts look at factors including the degree of kinship between the parties, the disparity in age, health, education, or business experience between the parties, and the extent to which the servient party entrusted the handling of its business to the dominant party and placed its trust and confidence in it. *Benson v. Stafford*, 407 Ill. App. 3d 902, 913 (1st Dist. 2010). (citing *Ransom v. A.B. Dick Co.*, 289 Ill. App. 3d 663, 674 (1997)). "Generally, where parties capable of handling their business affairs deal with each other at arm's length, and there is no evidence that the alleged fiduciary agreed to exercise its judgment on behalf of the alleged servient party, no fiduciary relationship will be deemed to exist. *Id*. (citing *State Security Insurance Co. v. Frank B.Hall & Co.*, 258 Ill. App. 3d 588, 597-98 (1st Dist. 1994)). "The mere fact that the parties have engaged in business transactions … is not itself sufficient to establish a fiduciary relationship. *Id*. at 914. The "essence" of a fiduciary relationship is dominance of one party by the other. *Id*. at 913.

"Indeed, in the ***absence of dominance and influence*** there is no fiduciary relationship regardless of the levels of trust between the parties." *Id*. (citing *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 21 (1995)) (emphasis added).

*i. Mr. Gereg Owes No Fiduciary Duty to the Debtor.*

11

The Trustee's Complaint is completely devoid of any allegations that Mr. Gereg had dominance, influence, and/or control over the Debtor; thus, he has failed to allege facts sufficient to establish that Mr. Gereg owed a fiduciary duty to the Debtor. The Trustee simply states a conclusory allegation that he "trusted" Mr. Gereg to act in the Debtor's best interests as to "all matters." Compl. ¶266. This allegation is insufficient to support a claim for breach of fiduciary duty as a matter of law. *See Pearson v. Garrett-Evangelical Theol. Seminary, Inc.,* 790 F. Supp. 2d 759 (N.D. Ill. 2011) ("Here, Pearson simply states a conclusory allegation that he "entrusted" Garrett to administer his donated funds and that Garrett occupied a 'position of trust and confidence with regard to Mr. Pearson…Nothing in Pearson's conclusory allegations would support a reasonable inference that Garrett was able to gain 'superiority and influence' over Pearson or that he otherwise owed any fiduciary duties to Pearson as a result of Pearson's donation."). *See also Chua v. Shippee,* 2013 U.S. Dist. LEXIS 128634 (N.D. Ill. 2013) (providing bad professional advice does not made someone a fiduciary).

*ii. Even if There Were a Duty, It Wasn't Breached.*

If this Court somehow concludes that the Trustee's bare allegations are enough to support a finding that Mr. Gereg owed a fiduciary obligation to the Debtor, the fiduciary duty claims still fail because the Complaint fails to allege facts demonstrating that any such duty was breached. As to that element, the Trustee vaguely alleges in Count X that Mr. Gereg "betrayed" the Debtor by negotiating the Assignment of Loan Documents that assigned the loan from the Bank to BWC. *See* Compl. at ¶¶267-68. However, the Trustee's ***own allegations*** elsewhere in the pleading make clear that the Debtor (through its attorneys) "participated in the drafting and negotiating of the Loan Assigment to BWC Capital while Freeborn was representing the Debtor." *See* Compl. at ¶66. In fact, the Trustee alleges that the Debtor paid its attorneys to draft and negotiate

12

the Loan Assignment that it concurrently claims constitutes a breach of Mr. Gereg's duty to the Debtor. *See* Compl. at ¶¶66-67.

    iii.    *The Complaint Fails to Allege Proximate Cause*

In a single conclusory allegation, the Trustee alleges that "the Debtor and its creditors suffered damages which arose as a proximate result of Mr. Gereg's self-dealing and breaches of fiduciary duty described herein." *See* Compl. at ¶269. This allegation should not withstand muster under 7012(b). *See Doe v. Vill. of Arlington Heights*, 782 F.3d 911 (7th Cir. 2015) ("mere conclusory statements are insufficient to survive a motion to dismiss.").[3]

Even a loose and generous reading of the Trustee's Complaint reveals that the only possible damage it might be alleging as a result of Mr. Gereg's "conduct" is that BWC eventually foreclosed on the Debtor's assets. However, the Complaint also alleges that the Bank had already instituted proceedings against the Debtor to repossess its property and for damages prior to BWC's formation. *See* Compl. ¶¶30-31. The reasonable inference is that the Bank's assignment to BWC gave the Debtor new life and bought it some time to climb out of distress; that it ended up in default to BWC is unfortunate, but nothing in the Complaint properly alleges a causal link between Mr. Gereg's conduct and any cognizable damage suffered by the Debtor. There is no "but/for" or proximate causation here; the Bank was well on its way to repossess the Debtor's property months before BWC was formed. Quite frankly, the Trustee wants this Court to conclude that Mr. Gereg breached his duty to the Debtor by negotiating the Loan Assignment with the Bank—the same Loan Assignment in which the Debtor participated and negotiated in with the assistance of its counsel. *See* Compl. at ¶¶66-67.

---

[3] Recalling the guidance of *Twombly* here is also helpful: "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Twombly*, 550 U.S. at 557.

13

These allegations simply do not establish proximate cause sufficient under the applicable pleading standards.

> iv. *The Corporate Opportunity Claim Fails Because Mr. Gereg Is Not a Fiduciary*

The corporate opportunity doctrine prohibits a corporation's fiduciary from misappropriating corporate property and taking advantage of business opportunities belonging to the corporation. *Dremco, Inc. v. South Chapel Hill Gardens*, Inc., 274 Ill. App. 3d 534, 538, 654 N.E.2d 501, 504-05, 211 Ill. Dec. 39 (1st Dist.). The core principle is that a fiduciary will not be permitted to usurp an opportunity that was developed through the use of corporate assets. *Id*. The corporate opportunity doctrine prohibits a corporation's fiduciary from taking advantage of business opportunities that are considered as "belonging," as far as the fiduciary is concerned, to the corporation. *Lindenhurst Drugs, Inc. v. Becker*, 154 Ill. App. 3d 61, 67, 506 N.E.2d 645, 650, 106 Ill. Dec. 845 (2d Dist. 1987).

For the reasons set forth in Section C(i) above, Mr. Gereg is not a fiduciary of the Debtor. As a result, the Trustee cannot maintain a claim based upon the corporate opportunity doctrine. *Id.*

**D. Counts XV-XVI should be dismissed because there can be no conspiracy to commit fraud where there is no fraud.**

In Illinois, to sustain a claim for conspiracy to commit fraud, a plaintiff must show "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 594 F. Supp. 2d 945, 979-980 (N.D. Ill. 2009) (quoting *Bosak v. McDonough*, 192 Ill. App. 3d 799, 803 (1st Dist. 1989) (emphasis added). Thus, to properly state a valid conspiracy to defraud claim, plaintiffs must allege facts establishing the elements of fraud under Illinois law. In the absence of fraud, plaintiffs cannot show any injury

caused by the fraud and there can be no conspiracy to commit fraud. *Id.* citing *Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 878 F. Supp. 1156, 1162 (N.D. Ill. 1995).

The alleged basis for the Trustee's conspiracy claims against Mr. Gereg, BWC, and Barsanti appear to be its fraudulent transfer claims against these defendants. Because the Trustee has failed to allege facts sufficient to state a cause of action against these defendants for fraudulent transfer, its claims of conspiracy against these defendants must fail as well. *Id.*

### E. Count XVI Should be Dismissed Because There can be no Aiding and Abetting a Fraudulent Transfer Where There is no Fraudulent Transfer.

To state a claim for aiding and abetting, one must allege that: (1) the party whom the defendant aids performed a wrongful act causing an injury; (2) the defendant was aware of his role when he provided the assistance; and (3) the defendant knowingly and substantially assisted the violation. *Settlers' Hous. Serv. v. Schaumburg Bank & Trust Co, N.A. (In re Settlers' Hous. Serv.),* 514 B.R. 258, 278 (Bankr. N.D. Ill 2014) citing *Thornwood, Inc. v. Jenner & Block,* 344 Ill. App. 3d 15, 27-28 (Ill. App. Ct. 2003). In other words, aiding and abetting is a theory for holding the person who aids and abets liable for the underlying tort itself. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). Thus, if there is no underlying tort, then one cannot be said to have aided and abetted the tort. As articulated in the case of *Abrams v. McGuireWoods, LLP*, which dealt with aiding and abetting a breach of fiduciary duty: "If [Plaintiff] can't plausibly allege that the underlying breach of fiduciary duty occurred, they cannot state an aiding and abetting claim against [Defendant]. In other words, if there wasn't a breach of a fiduciary duty to begin with, then there wasn't anything for [Defendants] to assist." 518 B.R. 491, 500 (N.D. Ind. 2014).

15

Similarly, here, Mr. Gereg, BWC, and Barsanti have successfully advanced the theory that the Trustee has failed to allege a cause of action for fraudulent transfer against them; accordingly, the aiding and abetting claims simultaneously fail.

### F. Counts XIX and XX Should Be Dismissed Because "Injunction" Is Not A Separate Cause of Action.

Curiously, the Trustee has included Counts XIX and XX for "Injunction" against BWC and Barsanti, respectively. An injunction, however, is a remedy rather than a cause of action and should be appropriately dismissed. *See Independents Gas & Serv. Stations Ass'ns v. City of Chicago*, 2015 U.S. Dist. LEXIS 85348 (N.D. Ill. June 29, 2015). *See also Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995).

### G. XXI and XXII Should Be Dismissed Because There is No Fraudulent Transfer.

Count XXI is a claim for Equitable Subordination against Mr. Gereg, Barsanti, and BWC. In the Seventh Circuit, a bankruptcy court must find three conditions before it may equitably subordinate a claim: (1) the claimant must have engaged in some type of inequitable conduct; (2) the misconduct must result in injury to the creditors of the bankrupt or confer an unfair advantage on the claimant; and (3) equitable subordination must not be inconsistent with the provisions of the bankruptcy code. *In re Lifschultz Fast Freight*, 132 F.3d 339, 344 (7th Cir. 1977).

The following types of conduct are considered "inequitable" in an equitable subordination context: (1) fraud, illegality or breach of fiduciary duty; (2) undercapitalization; or (3) the claimant's use of the debtor as an alter ego. In re Lifschultz Fast Freight, 132 F.3d 339, 345 (7th Cir. 1997). Here, although quite difficult to ascertain from the vague pleading, the Trustee appears to be suggesting that

16

equitable subordination is proper here against Mr. Gereg, BWC, and Barsanti due to the alleged fraudulent conduct (the fraudulent transfers) and/or Mr. Gereg's alleged breach of fiduciary duty. However, because the Trustee has failed to state a claim for fraudulent transfer or breach of fiduciary duty, *see supra*, his claims for equitable subordination lack merit.

Moreover, for a court to equitably subordinate an inside creditor's claim, "the creditor-insider must actually use its power or control to its own advantage or to other creditors' detriment." *In re Mr. R's Prepared Foods, Inc.*, 251 B.R. 24, 29 (Bankr. D. Conn. 2000) (citing *In re Fabricators, Inc.*, 926 F.2d 1458, 1467 (5th Cir. 1991)). The allegations here do not indicate in any fashion that Mr. Gereg, BWC, or Barsanti had any type of particular "power" or "influence" over the Debtor, nor do the facts as alleged suggest that any of these defendants used that power to gain some type of advantage over the Debtor to the creditors' detriment. The pleading simply lacks a factual basis to sustain this cause of action.

Finally, Count XXII is a Count for "Avoidance of Liens" against BWC. The basis for the Trustee's avoidance claims is that BWC engaged in a fraudulent transfer of the Debtor's assets.[4] As set forth above, however, BWC acquired the Bank's security interest over all the assets of the Debtor, *see infra*. Accordingly, there is simply no basis in fact or law to avoid its liens, and Count XXII should be dismissed as a result.

**IV. Conclusion**

**WHEREFORE,** for all of these reasons, Mr. Gereg, BWC, and Barsanti urge dismissal of I, II, III, IV, V, VI, X, XI, XV, XVI, IX, X, XXI, and XXII of Eugene Crane's

---

[4] Count XXII is the definition of "shotgun pleading" as it incorporates wholesale the entire 359 paragraphs prior to the Count, so it is not clear what exactly the Trustee believes entitles him to avoid the liens. That said, BWC engaged in no wrongful conduct here, so avoidance is improper.

17

(the "Trustee") Adversary Complaint, and any other relief this Court deems just and proper.

                                                     Respectfully Submitted,

                                                     Vivek Jayaram, attorney for Robert Gereg, BWC Capital, LLC, and Barsanti Millwork, LLC

                                                     /s/ Vivek Jayaram_____
                                                   One of Their Attorneys

## CERTIFICATE OF SERVICE

      I, Vivek Jayaram, an attorney, being duly sworn on oath depose and state that I caused **ROBERT GEREG, BWC CAPITAL, LLC, AND BARSANTI MILLWORK, LLC'S MOTION TO DISMISS THE TRUSTEE'S ADVERSARY COMPLAINT**, to be served by the ECF System of the United States Bankruptcy Court for the Northern District of Illinois on all counsel of record before the hour of 5:00 p.m. on November 2, 2015.

                                                   s/Vivek Jayaram

Vivek Jayaram
Jayaram Law Group, Ltd.
33 North LaSalle Street
29th Floor
Chicago, IL 60602
(312) 454-2859